THE PHŒNIX INSURANCE COMPANY OF NEW YORK v. ORRIN T. WELCH, *as Superintendent, &c.*— THE HOME INSURANCE COMPANY OF NEW YORK v. ORRIN T. WELCH, *as Superintendent, &c.*

1. LAW — *Operation to Depend on a Contingency.* While the legislative power of the state is by the constitution vested in the legislature, yet that body has authority to pass a law whose operation is by its terms made to depend on a contingency, even though that contingency be some action on the part of the legislature of another state.

2. SEC. 17 OF INSURANCE LAW, *Valid.* Section 17 of the act relating to insurance, (ch. 50a, Comp. Laws 1879,) so far as it provides that, when the laws of any other state impose upon the corporations of this state applying to transact business within its limits other and more onerous burdens and conditions than those prescribed by the general provisions of said chapter for corporations seeking to transact business in this state, the same burdens and conditions shall be imposed upon corporations from that state applying to enter this, is a complete and absolute expression of the legislative will, and though its operation depends on the contingency of legislative action in other states, it is not thereby rendered unconstitutional.

3. FEES, *How Considered.* The fees and charges required by said section are to be considered in the nature of licenses, and as such not subject to the constitutional provision as to equality of taxation.

4. CONTINGENCY, *Arises, When.* The contingency named in said section arises when the laws of another state impose the additional burdens and conditions, and is not delayed until some corporation of this state is actually subjected to such burdens and conditions.

### *Error from Shawnee District Court.*

TWO ACTIONS brought — one thereof by the *Phœnix Insurance Company,* the other by the *Home Insurance,* both of New York — against *Orrin T. Welch,* as Superintendent of Insurance of Kansas, to recover certain moneys paid to him by them under protest. The defendant demurred to each petition, on the ground that it did not state facts sufficient to constitute a cause of action. At the September Term, 1882, of the district court, these demurrers were sustained, and orders and judgments made accordingly. Plaintiffs bring the

cases here for review.   The facts are sufficiently stated in the opinion.

*Martin & Mileham,* and *J. G. Slonecker,* for plaintiffs in error; *Walker & Carter,* of counsel.

*W. A. Johnston,* attorney general, for defendant in error.

The opinion of the court was delivered by

BREWER, J.: The single question in this case is as to the constitutionality of what is known as the retaliatory section of our insurance law.   That section reads as follows:

" Whenever the existing or future laws of any other state or government shall require insurance companies organized under the laws of this state, applying to do business by agencies in such other state or government, or of the agents thereof, any deposit or security in such state for the protection of policyholders therein, or otherwise; or any payment for taxes, fines, penalties, certificates of authority, licenses, fees or otherwise, greater than the amount required for such purposes from insurance companies of other states by the then existing laws of this state, then, and in every case, all companies of such states or governments, establishing agencies in this state, shall make the same deposit, for a like purpose, with the superintendent of insurance of this state, and pay to said superintendent for taxes, fines, penalties, certificates of authority, licenses, fees or otherwise, an amount equal to the amount of such charges and payments imposed by the laws of such other state or government upon the companies of this state and the agents thereof.   All insurance companies, partnerships and associations organized under any foreign government engaged in the transaction of the business of insurance in this state, as provided for in this act, shall annually, on or before the first day of March in each year, pay to the superintendent of insurance two per cent. on all premiums received in cash or otherwise by their attorneys or agents in this state, during the year ending on the preceding 31st of December; which sum shall be paid, in addition to the other license fees, into the state treasury for the insurance fund.   In case of neglect or refusal by any company to pay said sum, the superintendent of insurance shall revoke the license or authority granted such company."

43—29 KAS.

Its unconstitutionality is claimed upon two general propositions:

First, that its validity depends upon the legislation of some other state, and that it is therefore not in and of itself a complete expression of the legislative will. Thus, it makes the law of this state determined, not by what the legislature itself says, but by the varying enactments of other states. Second, it conflicts with the principle of equality of taxation required by § 1, of article 11 of the state constitution.

Preliminarily to an inquiry as to the constitutionality of this section, we remark, first, that it is settled law, and now goes without saying, that an act of the legislature will not be declared unconstitutional unless it is clearly in conflict with the organic instrument. All doubts will be resolved in favor of the validity of the law. Second, that there is a manifest justice and fairness in the law. Corporations created by other states have no inherent right to enter into this state and transact business. Each state may determine for itself what corporations of other states may transact business within its borders, and upon what conditions they may so transact business. (*Paul v. Virginia,* 8 Wall. 168.) Now our insurance laws provide that insurance corporations of other states may enter into this state and transact business upon certain limited conditions, designed only to protect the citizens of this state against irresponsible and fraudulent organizations elsewhere. In other words, this state holds itself out to all other states of the Union as willing to meet them upon a basis of substantial freedom as to all insurance transactions. It couples, however, with this general extension of freedom, a provision that if any other state shall, by its laws, hamper and restrict the privileges of corporations created under our laws, in the transaction of insurance business within its borders, the same burdens and restrictions shall be imposed upon corporations of that state, seeking to transact business with us. This provision is called in insurance circles a "retaliatory clause." It seems to us more justly to be deemed a provision for reciprocity. It says, in

effect, that while we welcome all insurance corporations of other states to the transaction of business within our limits, we insist upon a like welcome elsewhere, and that if other states shall attempt, directly or indirectly, to debar our corporations from the transaction of insurance business within their borders, we shall meet their corporations with the same restrictions and disability. It is, in brief, an appeal for comity; a demand for equality. As such, it is manifestly fair and just. It arouses no sense of injustice, and simply says to every other state in the Union: "We will meet you on the basis of equality and comity, and will treat you as you treat us."

With these preliminary observations we pass to a consideration of the particular matters claimed to create an invalidity in the section. Much discussion has prevailed as to the question how far a law must be complete when it passes from legislative action. In *Barto v. Himrod*, 8 N. Y. 483, it appeared that the legislature of New York passed an act establishing free schools, which provided that the electors should determine by ballot at the ensuing annual election whether such act should become a law or not, and it was held that such act was unconstitutional and void. The reason given was, that by the constitution the legislature is made the sole depositary of legislative power; that it must of itself determine absolutely and finally whether any proposed measure shall or shall not become a law, and that it cannot delegate such determination to any other officer, tribunal, or body. This doctrine has been followed in many cases, and is invoked here to avoid the section in dispute. It is argued that our legislature did not finally and absolutely determine what burden, whether it be called a tax or a license, shall be imposed upon the plaintiff as a condition of doing business in this state, but has left the matter open to the determination of the legislature of the state of New York. This subject is discussed by Cooley in his Constitutional Limitations, pp. 117 and following, and the cases thereon cited in the notes. We do not deem it necessary to enter into a full discussion of

the question, or determine whether, as to a similar statute the ruling in *Barto v. Himrod* should be followed. All that we deem necessary to decide is, that the legislature may constitutionally pass a law whose operation is made to depend upon some contingency, and that the contingency named in this section is not such as to vitiate it. This distinction is indicated by the court in its opinion in the case of *Santo v. The State*, 2 Iowa, 203, in these words:

"Now if the people are to say whether or not an act shall become a law, they become or are put in the place of the lawmaker. And here is the constitutional objection: their will is not a contingency upon which certain things are or are not to be done *under the law*, but it becomes the determining power whether such *shall be the law or not*."

Now in this section is absolutely and finally prescribed the rule and measure of license. It is not left to the state superintendent to determine what the rule shall be. His duty is simply to ascertain the facts, and apply the rule. He may not arbitrarily determine upon what conditions the plaintiff may enter this state; he can only enforce the condition which the legislature has imposed. It is true the extent of those conditions may vary in different cases, but the rule to determine the variance is not left to his judgment, but is prescribed by the legislature. Our laws abound in cases in which a statute is made dependent upon the action of some tribunal or body, or upon some other contingency, and is therefore practically dormant until such action takes place or contingency happens. The laws authorizing municipalities to issue bonds are instances. They are almost universally made to depend upon the vote of the people of the municipality. And until and unless such vote is had, the law is practically dormant. Of a similar nature are the hedge-bounty laws, the herd laws, many of the statutes for the regulation of municipal governments, and others which might be named. This section, it is true, provides that in certain contingencies higher burdens may be imposed upon some foreign insurance companies than upon others, but it defines the contingencies and prescribes the rule for fixing such higher burdens.

But it is said that the contingency is the action of the legislature of a foreign state — that in effect the section attempts to transfer the law of such foreign state to our own, and make it operative within our territorial limits. Not so: the section is the law of Kansas, enforced solely within our limits, and in enforcing it the superintendent is only obeying the mandate of our legislature. True, the contingency is created by the action of a foreign state, and the section refers the superintendent to the legislation of that state to determine whether the contingency has arrived. But this is not the only instance in which our legislation refers to that of other states, and in a certain sense makes that legislation of force here. As is well said by the supreme court of Illinois in a recent case decided by it, a case which is exactly in point with this, and in which the conclusion of that court accords with our own — the case of *The Home Insurance Company v. Swigert:*

"Who has ever doubted the validity of that portion of our statute which declares that deeds executed without the state may be acknowledged before anyone authorized to take such acknowledgments, by the laws of the state or country in which they are made? Or who has ever questioned the constitutionality of that provision of our statute which makes all wills and testaments made in a foreign state or country binding and valid here, if executed and proven agreeably to the laws and usages of such foreign state or country, although not in accordance with our general law on the subject? And yet, in either of these cases there is just as much reason for claiming that our legislature has abdicated its legislative functions, and attempted to delegate its constitutional and legitimate powers to a foreign state or country, as there is that it has done, or attempted to do so, in the present case."

See also what is said by Chief Justice Redfield, in *State v. Parker,* 26 Vt. 357:

"One may find any number of cases in the legislation of congress, where statutes have been made dependent upon the shifting character of the revenue laws, or the navigation laws, or commercial rules, edicts, or restrictions of other countries. In some, perhaps, these laws are made by representative bodies, or it may be by the people of these states, and in oth-

ers by the lords of the treasury or the board of trade, or by the proclamation of the sovereign; and in all these cases no question can be made of the perfect legality of our acts of congress being made dependent upon such contingencies. It is in fact the only possible mode of meeting them, unless congress is kept constantly in session. The same is true of acts of congress by which power is vested in the president to levy troops, or draw money from the public treasury, upon the contingency of a declaration or an act of war committed by some foreign state, empire, kingdom, prince, or potentate."

In all these cases it is the law of the home government which is enforced, and the action of the foreign government only makes the contingency upon which the law becomes operative. There is no difference in principle between such contingency and any other which may be provided for in the statute. In all such cases it is the duty of the officer charged with the execution of the law to inquire as to the facts, and ascertain whether the contingency named has arrived, and if so to enforce the mandate of his superior, the legislature. We think, therefore, that the section is not obnoxious to the charge of unconstitutionality on this ground.

Neither can the other reason be sustained. It matters not whether this charge upon the plaintiff is to be regarded in the nature of taxation, or a license. In neither case is it justly obnoxious to the charge of inequality in the sense that would make it unconstitutional. The legislature may classify for the purposes of taxation or license, and when the classification is in its nature not arbitrary, but just and fair, there can be no constitutional objection to it. Thus, within the state municipalities are classified by population, and the authorized rate of taxation is, or may be, very different in each. Here foreign insurance corporations are classified by the states from which they come, and when we consider the purposes of such classification it cannot be held that there is anything arbitrary or unjust therein. But doubtless this charge is not to be considered as within the constitutional restrictions as to taxation, but rather in the nature of a license or condition of entering this state and transacting business within its limits; and as

such its validity may be considered as settled by the case of the *City of Leavenworth v. Booth*, 15 Kas. 627. See in addition to the authority from Illinois, cited *supra*, the case of *Goldsmith v. Home Ins. Co.*, 62 Ga. 379.

One other point remains to be considered. It is insisted that as no Kansas insurance corporation has applied for admission to the state of New York, the contingency named in the section has not arisen. This we think is a mistake. The contingency named is not that New York is in fact imposing the extra burdens upon one of our corporations, but that the laws of that state provide for such extra burdens. Whenever those laws require it, then the contingency named in our statute has arisen.

These are the only matters requiring notice, and in them appearing no error in the ruling of the district court, the judgment will be affirmed.

—It is understood that the case immediately succeeding this on the docket, No. 2766, involves only the same questions, and therefore the same judgment of affirmance will be entered in that case.

VALENTINE, J., concurring.

HORTON, C. J., dissenting.