The State, ex rel. Howard, v. Johnston.

No. 12,200.

THE STATE, EX REL. HOWARD, v. JOHNSTON.

PROSECUTING ATTORNEY.—*Residence.—Judicial Circuit.—Constitutional Law.*
—Under sections 9 and 11 of article 7 of the Constitution of this State,
of 1851, the prosecuting attorney, like the judge of each judicial circuit,
is required to reside within his circuit.

SAME.—*Judicial Circuits.—Legislative Power and Discretion.—Constitutional Re-
striction.*—The General Assembly has the power, in its discretion, to di-
vide a judicial circuit at any time during the terms of office of the judge
and prosecuting attorney of such circuit, subject only to the restrictions
that the Legislature can not, by any legislation, abridge the official terms
of either of such officers, nor deprive either of them of a judicial cir-
cuit, wherein he may serve out the constitutional term for which he was
elected. Section 5 of the act of February 25th, 1885 (Acts 1885, p.
29), in so far as it relates to the office of prosecuting attorney, is uncon-
stitutional and void.

From the Montgomery Circuit Court.

*E. C. Snyder, A. B. Anderson* and *F. M. Howard,* for ap-
pellant.

*J. M. Seller* and *C. Johnston,* for appellee.

HOWK, J.—This was an information in the nature of a *quo
warranto,* filed by the appellant's relator, Howard, against the
appellee, Johnston. The appellee demurred to the informa-
tion, upon the ground that it did not state facts sufficient to
constitute a cause of action. This demurrer was sustained by
the court, and this ruling is the only error assigned here by
the appellant's relator.

In his information the relator alleged that, at the general
election in November, 1884, he was duly elected prosecuting
attorney of the Twenty-second Judicial Circuit of this State,
then composed of the counties of Montgomery and Parke;
that, at the time of his election to such office, the relator was
and had since continued to be a practicing lawyer, duly ad-
mitted to practice in all of the courts of this State, and was
then and since had been a resident citizen and qualified voter
of the State, and, in all respects, eligible to such office; that,

on the 18th day of November, 1884, the relator was duly commissioned by the governor of the State as such prosecuting attorney, and on the same day he duly qualified as such officer by filing his official bond and taking the oath of office, as required by law, and entered upon the discharge of his official duties as the prosecuting attorney of such judicial circuit; that, at the time of his election and qualification as aforesaid, the relator was a resident of Parke county, and had since continued to reside therein; and that he was competent, ready and willing, and in all respects qualified to perform the duties of the prosecuting attorney of the Twenty-second Judicial Circuit.

And the relator averred that by virtue of an act of the General Assembly of this State, approved February 25th, 1885, the county of Montgomery was constituted the Twenty-second Judicial Circuit, and the county of Parke and the county of Vermillion were constituted the Forty-seventh Judicial Circuit; that, under the provisions of the last mentioned act, the governor of the State had appointed and commissioned the appellee Johnston as the prosecuting attorney of the Twenty-second Judicial Circuit, as thereby constituted; that, on the 2d day of March, 1885, the appellee had duly qualified as such prosecuting attorney by filing his official bond and taking the oath of office, as required by law; that, on the day last named, the appellee Johnston usurped and intruded into, and had since exercised and unlawfully held, the office of prosecuting attorney of the Twenty-second Judicial Circuit, and had thereby interfered with, hindered and prevented the relator Howard in or from exercising the functions of his office in such judicial circuit.   Wherefore, etc.

It will be readily seen from the facts stated in the relator's information, that it proceeds upon the theory, that in so far as it affects the relator the recent act of February 25th, 1885, (Acts 1885, p. 28), mentioned in the information, is as to him unconstitutional, inoperative and void.   The case has been orally argued before us, with much ability and learning on both sides,

and, in the course of the argument, one fact was admitted by the counsel of the respective parties, which ought to have been but was not alleged in the information, and which seems to us to be of fundamental value and importance in the proper decision of the matters in controversy between the relator and the appellee. The fact thus admitted, which is shown to be true by the records of the office of the secretary of state, of which records we take judicial notice, is that John W. Conley, Esq., who was elected at the general election in November, 1884, to the office of prosecuting attorney of the Twenty-first Judicial Circuit, as it existed then and until the taking effect of the aforesaid act of February 25th, 1885, and was commissioned and qualified as such for the term of two years from and after the, 17th day of November, 1884, was at the time of such election, since has been and now is, a resident of the county of Vermillion. In determining the questions in controversy in this cause we shall consider and decide such questions as if such admitted fact had been, as it ought to have been, alleged in the relator's information.

The act of the General Assembly of February 25th, 1885, which has given rise to this suit, is entitled "An act creating and defining the Twenty-first, Twenty-second and Forty-seventh Judicial Circuits of the State of Indiana, and fixing the length of terms and time of holding the terms of court therein, and providing for the appointment of a judge for the Forty-seventh Judicial Circuit, for the appointment of a prosecuting attorney for the Twenty-first Judicial Circuit, for the appointment of a prosecuting attorney for the Twenty-second Judicial Circuit, and other matters connected therewith, and repealing all laws in conflict, and declaring an emergency."

Section 1 of this act provides that the Twenty-first Judicial Circuit shall be composed of the counties of Fountain and Warren, and fixes the terms of court and their length in each county.

Section 2 declares that the Twenty-second Judicial Circuit

shall be composed of the county of Montgomery, and fixes the terms of court and their length in such county.

Section 3 provides that the Forty-seventh Judicial Circuit shall be composed of the counties of Vermillion and Parke, and fixes the terms of court and their length in each county.

Section 4 provides for the return of process, etc., and for other matters made necessary by the passage of the act.

Section 5 reads as follows: "It shall be the duty of the Governor, immediately after the taking effect of this act, or as soon thereafter as practicable, to appoint and commission a judge for the Forty-seventh Judicial Circuit as constituted by this act; also, to appoint and commission, as soon as practicable after the taking effect of this act, a prosecuting attorney for the Twenty-first Judicial Circuit as constituted by this act; also, a prosecuting attorney for the Twenty-second Judicial Circuit as constituted by this act, who shall hold their offices until the next general election thereafter, and until their successors shall have been elected and qualified."

Section 6 repeals all laws and parts of laws in conflict with this act.

And section 7 declares an emergency, and that this act shall take effect and be in force from and after its passage.

Prior to the taking effect of this act, the counties named therein, since March 6th, 1873, constituted two judicial circuits; the counties of Vermillion, Fountain and Warren composing the Twenty-first Judicial Circuit, and the counties of Parke and Montgomery constituting the Twenty-second Judicial Circuit. By the above entitled act of February 25th, 1885, the county of Vermillion was taken out of the Twenty-first Judicial Circuit, as it previously existed, and the county of Parke was taken out of the Twenty-second Judicial Circuit, as it theretofore existed, and these two counties, Vermillion and Parke, were constituted the new Forty-seventh Judicial Circuit.

We come now to the consideration of the several questions presented by the record of this cause and the arguments of

counsel for our decision. In section 9 of article 7 of the State Constitution of 1851 (section 169, R. S. 1881), it is declared and ordained as follows: "The State shall, from time to time, be divided into judicial circuits; and a judge for each circuit shall be elected by the voters thereof. He shall reside within the circuit, and shall hold his office for the term of six years, if he so long behave well."

In section 11 of article 7 of the Constitution of 1851 (section 171, R. S. 1881), it is thus ordained: "There shall be elected, in each judicial circuit, by the voters thereof, a prosecuting attorney, who shall hold his office for two years."

It is not claimed by the relator's counsel, as we understand their arguments, that the General Assembly exceeded their constitutional powers in subdividing the Twenty-first and Twenty-second Judicial Circuits, as they previously existed, in such manner as to create and establish, out of their territory, three judicial circuits instead of the two, as is done in the above entitled act of February 25th, 1885. In so far as the mere creation of the three judicial circuits is concerned, the act under consideration is, beyond doubt, a constitutional and valid law. In the early case of *Stocking* v. *State,* 7 Ind. 326, the point was made that, under section 9 of article 7 of the State Constitution, the subdivision of the State into judicial circuits could be made only every six years, and that no division could be made, nor new circuits created, at any intermediate time. On this point the court said: "There is nothing in the section itself requiring such a construction. The words 'from time to time' do not import any particular period. Certainly these words will admit, and the common sense of the case would seem to require, that the Legislature might create new circuits 'from time to time,' as in their opinion the exigencies of business might require." Upon the same subject, in *Clare* v. *State,* 68 Ind. 17, the court said: "The formation or creation of judicial circuits by legislation, and the repeal of such legislation or its amendment, are matters wholly within the discretion and power of the General As-

sembly. Of course, the Legislature can not, by any legislation, abridge the constitutional term of office of an elected circuit judge," nor, we may add, of an elected prosecuting attorney, as applicable to the case in hand. *Moser* v. *Long*, 64 Ind. 189.

It is insisted on behalf of the relator, that notwithstanding the above entitled act of February 25th, 1885, he still is, and will continue to be until the expiration of the term for which he was elected, the prosecuting attorney of the Montgomery Circuit Court, because, as he says, residence in the judicial circuit is not a constitutional requisite or qualification for his election to, or his tenure of, the office of prosecuting attorney. We recognize the rule that where the Constitution prescribes the qualifications of an officer, the Legislature can not add to or detract from such qualifications, unless the power so to do is expressly conferred in the Constitution. *Feibleman* v. *State, ex rel.*, 98 Ind. 516, and cases cited. This rule does not seem to us, however, to be applicable here. Construing together sections 9 and 11 of article 7 of our State Constitution, the only sections relating to the elected officers of judicial circuits, we think it must be said that, under these sections, the prosecuting attorney, like the judge, must reside within the circuit for which he is elected.

The General Assembly had the undoubted power, in its discretion, to divide the Twenty-second Judicial Circuit, as it had existed for almost twelve years, during the terms of office of the judge and the prosecuting attorney thereof, subject only to the restriction that the law making such division, should provide circuits in which each of such officers might serve out the constitutional term for which he had been elected. In so far as the judge is concerned, who resides in Montgomery county, the act under consideration makes such provision, and that far forth is a constitutional and valid law. But as to the relator, the prosecuting attorney of the old circuit, the act provides no circuit. By reason of the fact that

both he and Mr. Conley, the prosecuting attorney of the Twenty-first Judicial Circuit, as it existed prior to February 25th, 1885, reside within the limits of the Forty-seventh Judicial Circuit as now constituted, the act under consideration provides no circuit for either of them.

Under the Constitution a prosecuting attorney is an officer of a judicial circuit. During his term of office his circuit may be changed, it is true; it may be enlarged or diminished. But it is not in the power of the General Assembly to legislate him out of a circuit. Where, therefore, as in this case, the law changing his circuit fails to provide the prosecuting attorney with a circuit, it must be that such law, as to him, is inoperative and void, and that notwithstanding such law, and precisely as if it had never been enacted, he is and will continue to be the prosecuting attorney of the circuit for which he was elected, in all the courts of the counties composing such circuit during the remainder of his term.

We are of opinion, therefore, that section 5 above quoted of the act under consideration, in so far as it relates to the office of prosecuting attorney, is unconstitutional, inoperative and void, and that by reason of the failure of the act to provide a circuit for either the relator or Conley, no vacancy existed or can exist in the office of prosecuting attorney in any of the three circuits named in such act until the expiration of the respective terms of office of the relator and Conley. The General Assembly can not create a vacancy in office by any ordinary legislation. They may create an office, and, if it is without an incumbent, a vacancy will exist of necessity, to be filled by the appointing power until the next general election. In *Stocking* v. *State, supra,* the court said: " We lay no stress on the declaration of the Legislature that there was a vacancy in the office of circuit judge of the new circuit. If there was a vacancy, it existed independent of that declaration. If there was no vacancy, that body could not create one by a declaratory enactment. The vacancy flowed as a natural consequence of their doing what they had a right to

do—to create a new circuit. * * An existing office, without an incumbent, is vacant, whether it be a new or an old one." We need hardly add that at the expiration of the terms of office of the relator and Conley, vacancies will exist in the office of prosecuting attorney in each of the three circuits named in the aforesaid act, to be filled at the next general election.

. Our conclusion is that the court erred in sustaining appellee's demurrer to the relator's information.

The judgment is reversed, with costs, and the cause is remanded, with instructions to overrule the demurrer to the information, and for further proceedings not inconsistent with this opinion.

Filed March 21, 1885.