The State, *ex rel.* Baldwin, Att'y Gen'l, *v.* The Ins. Co. of North America.

port the theory that the engineer purposely ran his engine upon the boy, or that he acted recklessly in disregard of human life.

The judgment is reversed, with costs, with directions to the court below to sustain the appellant's motion for a new trial.

Filed June 19, 1888.

———◆———

No. 9765.

THE STATE, EX REL. BALDWIN, ATTORNEY GENERAL, *v.* THE INSURANCE COMPANY OF NORTH AMERICA.

PARTIES.—*State.*—*Capacity to Sue.*—In the absence of any statute to the contrary the State may sue in its own name, without a relator, upon any cause of action it may have, and when it elects to do so it will be governed by the rules applicable to other parties.

FOREIGN INSURANCE COMPANIES.—*Moneys Due to State From.*—*Relator.*— While no relator is necessary in an action to recover moneys due to the State from foreign insurance companies doing business within the State, yet the action will also be well brought either on the relation of the attorney general or auditor of state.

SAME.—*Power of State to Regulate.*—*Constitutional Law.*—A State may impose upon foreign insurance companies, as a condition of coming into or doing business within its territory, any terms, conditions and restrictions that are not repugnant to the Constitution and laws of the United States.

SAME.—*Retaliatory Laws.*—Section 3 of the act of March 3d, 1877 (section 3773, R. S. 1881), which provides that where obligations or prohibitions are, by the laws of any other State, imposed upon insurance companies of this or other States, greater than are required by the laws of this State, then such obligations or prohibitions shall be imposed upon insurance companies of that State doing business here, is constitutional and enforceable.

VOL. 115.—17

The State, *ex rel.* Baldwin, Att'y Gen'l, *v.* The Ins. Co. of North America.

SAME.—*Taxation.—License Fees.*—Moneys which become due to the State from any foreign insurance company under the provisions of such retaliatory statute, whether regarded as taxes for revenue or as license fees, are due and payable as a part of the terms or conditions of its entering this State and transacting business within its limits, and such statute is not within the constitutional restrictions relating to taxation.

SAME.—*Statutes of Other States.—Must be Pleaded.*—The laws of other States upon the subject of insurance, such as are contemplated by the retaliatory statute of this State, are not adopted or enacted into the law of this State, but are merely facts, and as such must be pleaded and proved.

From the Marion Circuit Court.

*D. P. Baldwin, F. T. Hord* and *D. Turpie,* for appellant.

*A. C. Harris* and *W. H. Calkins,* for appellee.

HOWK, J.—In this case the only error assigned here by the State of Indiana, plaintiff below, is the sustaining of defendant's demurrer to plaintiff's complaint herein.

In its complaint the State alleged that defendant was an insurance company, organized in the State of Pennsylvania, and doing business within the State of Indiana, and as such governed by the laws of this State; that, on March 3d, 1877, an act was duly passed by the Legislature and approved by the Governor of this State, entitled "An act to amend section 1 of an act entitled 'An act regulating foreign insurance companies doing business in this State, prescribing the duties of the agents thereof, and of the auditor of state in connection therewith, and prescribing penalties for the violation of the provisions of this act,' approved December 21st, 1865, and adding supplemental sections thereto;" that section 3 of the above entitled act of March 3d, 1877, reads as follows:

" When, by the laws of any other State, any taxes, fines, penalties, licenses, fees, deposits of money or securities, or other obligations or prohibitions are imposed upon insurance companies of this or other States, or their agents, greater than are required by the laws of this State, then the same obligations and prohibitions, of whatever kind, shall, in like

manner, for like purposes, be imposed upon all insurance companies of such States, and their agents. All insurance companies of other nations, under this section, shall be held as of the State where they have elected to make their deposit and establish their principal agency in the United States." (Now known as section 3773, R. S. 1881.)

And plaintiff averred that on the day and year last named, and ever since, the law of this State for the taxation of foreign insurance companies has been as follows:

" Section 8. Every insurance company not organized under the laws of this State, and doing business therein, shall, in the months of January and July of each year, report to the auditor of state, under oath of the president and secretary, the gross amount of all receipts received in the State of Indiana, on account of insurance premiums for the six months last preceding, ending on the last days of December and June of each year, and shall, at the time of making such report, pay into the treasury of the State the sum of three dollars on every one hundred dollars of such receipts, less losses actually paid within the State."

That the section last quoted is section 8 of "An act supplementary and amendatory of an act entitled 'An act to provide for a uniform assessment of property, and for the collection and return of taxes thereon,' approved December 21st, 1872," approved March 8th, 1873 ; that the license fee required of foreign corporations, doing business within this State, is $30 per annum ; that since the passage of the aforesaid act of March 3d, 1877, the license fee imposed by the Legislature of the State of Pennsylvania upon foreign insurance companies doing business within that State had been $500 per annum as shown by the statute of that State, entitled "An act to revise, amend and consolidate the several laws regulating the licensing of foreign insurance companies," approved April 11th, 1868, of which so much as pertained to license, being section 6 of such act, was pleaded specially and set out at length in plaintiff's complaint herein ; that, by an act of the Legislature

of the State of Pennsylvania, entitled "An act to establish an Insurance Department," approved March 3d, 1873, the following is the rule of taxation of foreign insurance companies doing business in the State of Pennsylvania, to wit:

"No person shall act as agent or solicitor in this State of any foreign insurance company, of another State or foreign government, in any manner whatever relating to risks, until the provisions of this act have been complied with on the part of the company or association, and there has been granted to said company or association, by the commissioner, a certificate of authority showing that the company or association is authorized to transact business in this State; and it shall be the duty of every such company or association, authorized to transact business in this State, to make report to the commissioner in the month of January of each year, under oath of the president or secretary thereof, showing the entire amount of premiums of every character and description received by said company or association in this State, during the year or fraction of a year ending with the 31st day of December preceding, whether said premiums were received in money or in the form of notes, credits, or any other substitute for money, and pay into the State treasury a tax of 3 per centum upon said premiums; and the commissioners shall not have power to grant a renewal of the certificate of said company or association until the tax aforesaid is paid into the State treasury."

And plaintiff further averred that defendant had wholly failed and refused to comply with the provisions of the statute of this State above set forth, in this, to wit: Defendant had failed to pay into the treasury of this State since March 3d, 1873, the sum of $500 per year for a license to transact business within this State; that there was due the State of Indiana, for unpaid license fees, the sum of $2,000; that defendant had also failed to pay taxes into the State treasury, at the rate of 3 per cent. per annum upon its gross receipts; that since the said statute took effect, the gross receipts of premiums by defendant collected within the State of Indiana

had amounted to the sum of $200,000 ; that the taxes thereon at 3 per cent., which defendant ought to have paid, amounted to $6,000, and the sum actually paid was $2,500, leaving the sum of $3,500 due and owing to the State of Indiana as unpaid taxes, and wholly unpaid. Wherefore, etc.

Defendant's demurrer to plaintiff's complaint assigned the following grounds of objection thereto, namely :

1. Because the complaint did not state facts sufficient to constitute a cause of action ;

2. Because plaintiff had not the legal capacity to sue, on the relation of its attorney general, but the action, if at all maintainable, should have been brought upon the relation of the auditor of state ; and,

3. Because several causes of action had been improperly united, to wit, for taxes and for license fees.

This demurrer was sustained by the court, and plaintiff excepted, and, declining to amend or plead further, the court adjudged that it take nothing by its suit herein, etc.

In considering the question of the sufficiency of plaintiff's complaint, we will notice the grounds of objection thereto assigned by defendant, in the inverse order of their statement in its demurrer. The judgment below does not indicate that the demurrer was sustained by the court because several causes of action were united in the complaint, improperly or otherwise. But we may well assume that the complaint was not held bad because of the alleged misjoinder of causes of action therein ; for if the court had sustained the demurrer on the ground of such alleged misjoinder, it would have been the duty of the court, under the statute, to have caused two actions to be docketed between the parties, and that each should stand as a separate action—which was not done. Section 340, R. S. 1881.

Defendant's learned counsel claim that the second cause of demurrer was well assigned, or, in other words, that the action was not well brought upon the relation of the attorney general, and that it could only be brought and maintained,

under the statute, upon the relation of the auditor of state. In support of this claim, counsel cite and rely upon the *sixth* clause of section 2 of the above entitled act of March 3d, 1877 (now known as section 3772, R. S. 1881), which clause of the statute reads as follows: "*Sixth.* The auditor of state shall also have power to institute suit and prosecutions, either by the attorney general or such other attorneys as he may designate, for any violation of any of the provisions of this act." Defendant's counsel place too much stress, we think, upon this statutory provision, when they claim that it repeals by implication the power of the attorney general to sue in the name of the State, under the provisions of section 5668, R. S. 1881, in force since March 10th, 1873. The utmost that can be said in regard to the effect of the clause above quoted of section 3772, upon prior legislation, is, that if the case under consideration were a suit wherein a relator was necessary, and which could only be brought or maintained upon the relation of a State officer, after the act of March 3d, 1877, took effect, either the auditor of state or the attorney general would have been a competent relator herein.

We are of opinion, however, that no relator was necessary to enable the State to bring or maintain this action. Whenever the State has or claims to have a cause of action, which it seeks to enforce in any of its courts, in the absence of any statute to the contrary, we think that the action may be brought in the name of the State of Indiana, as plaintiff, without any relator; and especially so where, as here, the complaint is signed by the attorney general of the State. Of course, when the State becomes a suitor in the courts, it is as much bound by the laws of the land, by the rules of pleading and practice, and by the judgments and decisions of such courts, inferior or superior, as any other suitor. It may well be doubted, whether the second cause of demurrer assigned by the defendant, under our decisions, properly presented the question of the right or power of the attorney general to bring and prosecute this action in the name of the

State; but whether it did or not, the question is in the record and it ought to be decided. We do not doubt the power and authority of the attorney general to commence the action now before us and prosecute it to a final determination in the name of the State of Indiana upon his own relation, or *ex rel.* the auditor of state, or without any relator. Section 5660, R. S. 1881.

In *Shane* v. *Francis*, 30 Ind. 92, it was held by this court that no relator is necessary in an action by the State, when the obligation is to the State and no individual has an interest therein, other than that common to all.

In *State* v. *Johnson*, 52 Ind. 197, it was also held that where a cause of action exists in favor of the State, and the action is brought in the name of the State for a certain specified use, the words designating such use will be considered as surplusage, and the action will be regarded as an action properly brought by the State. The court there said : "By the agreement, which is the foundation of the action, the decedent agreed to pay the sum named directly to the State of Indiana, and in such case the action should have been brought in the name of the State, without any averment as for whose use it was brought." In the case in hand, the money sued for, if collected, would belong to the State of Indiana, and no individual would have an interest therein, except the interest common to all the inhabitants of this State. In such a case no relator is necessary.

But the principal and most important questions in the case at bar are presented by the first ground of objection to plaintiff's complaint, assigned in defendant's demurrer, namely : That the facts stated in such complaint were not sufficient to constitute a cause of action. These questions are by no means free from difficulty ; but they have been ably and exhaustively discussed, on both sides, in the oral, written and printed arguments of counsel learned in the law. Defendant's counsel insist that plaintiff's action will not lie, for three reasons, namely :

1. Because section 3 of the aforesaid act of March 3d, 1877, is unconstitutional and void.

2. Because taxes can not be levied, nor penalties laid, by reference merely to the laws of another State or nation.

3. Because such section 3 is void for uncertainty.

We will consider and pass upon the various objections urged by defendant's counsel to the constitutionality and validity of section 3 of the above entitled act of March 3d, 1877 (section 3773, R. S. 1881), in the same order, as nearly as practicable, as that in which counsel have presented them. We may premise, however, that the primary rule in all statutory exposition and interpretation, often recognized and applied in our decisions, is to explore and, if possible, discover the legislative intention in the enactment of the particular statute which at the time is the subject of inquiry and consideration. It must appear that the statute is clearly repugnant to or in conflict with some provision of our fundamental laws, State or Federal, or its provisions must be upheld and, if possible, must be enforced. In all cases, when the constitutionality of a statute is merely doubtful, it is clearly the duty of the courts to solve all doubts in favor of the statute, and sustain and uphold the constitutionality of the law, if it can be done by any fair construction. This is the doctrine of the decisions of this court, from its organization down to the present time. *Clare* v. *State,* 68 Ind. 17, and cases cited; *McComas* v. *Krug,* 81 Ind. 327; *Warren* v. *Britton,* 84 Ind. 14; *State, ex rel.,* v. *Johnston,* 101 Ind. 223; *Robinson* v. *Schenck,* 102 Ind. 307.

With these general rules in mind, we proceed now to the consideration and decision of the important questions so ably presented and discussed in this case by the learned counsel as well of the defendant as of the plaintiff herein.

1. Is section 3 of the amendatory and supplemental act aforesaid of March 3d, 1877 (section 3773, *supra*), unconstitutional and void? It may be premised that the first valid legislation of this State in relation to foreign insurance com-

panies and their agents doing business in this State, was an act entitled "An act regulating foreign insurance companies doing business in this State; prescribing the duties of the agents thereof, and of the auditor of state in connection therewith, and providing penalties for the violation of the provisions of this act," approved December 21st, 1865. Acts of 1865, Spec. Sess., p. 105, *et seq.* This act contained eight sections, exclusive of the emergency section, of which sections 2, 4, 5, 6 and 7 are still in force, and are now known, respectively, as sections 3766, 3768, 3769, 3770 and 3771, R. S. 1881.

Section 3 of the act of December 21st, 1865, was amended by an act approved March 12th, 1875. Acts of 1875, Spec. Sess., p. 51. The amended section is yet in force, and is now known as section 3767, R. S. 1881. The amendatory and supplemental act of March 3d, 1877, contained three sections exclusive of the section declaring an emergency. Section 1 of such amendatory act amended section 1 of the act of December 21st, 1865, and sections 2 and 3 were supplemental sections. Acts of 1877, Reg. Sess., p. 65, *et seq.* These three sections are still in force, and are now known, respectively, as sections 3765, 3772 and 3773, R. S. 1881.

Sections 3765 to 3773, *supra,* inclusive, contain the law of this State regulating foreign insurance companies doing business therein, and prescribing the duties of the agents of such companies and of the auditor of state in connection with such business, in force at the time plaintiff's alleged cause of action accrued against the defendant, and at the time this suit was commenced, and still in full force.

The principle that a State may impose upon a foreign corporation, as a condition of coming into or doing business within its territory, any terms, conditions and restrictions it may think proper, that are not repugnant to the Constitution or laws of the United States, is firmly established by the decisions of the Supreme Court of the United States. *Bank of Augusta* v. *Earle,* 13 Peters, 519 ; *Lafayette Ins. Co.* v.

*French,* 18 How. 404; *Paul* v. *Virginia,* 8 Wall. 168; *Ducat* v. *Chicago,* 10 Wall. 410; *Doyle* v. *Continental Ins. Co.,* 94 U. S. 535.

In *Paul* v. *Virginia, supra,* the court said: "The corporation being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created. As said by this court in *Bank of Augusta* v. *Earle,* 'It must dwell in the place of its creation, and can not migrate to another sovereignty.' The recognition of its existence even by other States, and the enforcement of its contracts made therein, depend purely upon the comity of those States—a comity which is never extended where the existence of the corporation or the exercise of its powers is prejudicial to their interests or repugnant to their policy. Having no absolute right of recognition in other States, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those States may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

Such is the law applicable to the question we are now considering, as it is declared by the highest court of last resort under our form of government. Under this law, and in the exercise of supreme and sovereign power, the General Assembly of this State enacted the above entitled act of December 21st, 1865, and the subsequent acts amendatory thereof or supplemental thereto, heretofore described and cited herein. In these acts the State of Indiana has imposed upon the defendant herein, and upon other foreign insurance companies, as a condition of coming into or doing business within its territory, such terms, conditions and restrictions as the State has thought proper.

We have been unable to discover, either from our own search and examination or by the aid of the briefs of defendant's counsel, that any one or more of such terms, conditions or restrictions are repugnant to the Constitution or laws of the United States. Under the decisions of the Supreme Court of the United States heretofore cited, it must be held, therefore, that the terms, conditions and restrictions imposed by our statutes regulating foreign insurance companies doing business in this State, were such as the State might lawfully impose upon the defendant herein, and other similar corporations, as a condition of coming into or doing business within its territory.

Much of the able brief of defendant's counsel is devoted to the consideration of the question whether the moneys sued for by the State in this action are taxes for revenue, or license fees exacted by virtue of the police power of the State. Counsel conclude, however, that, whether such moneys are taxes for revenue or license fees exacted as aforesaid, it must be held that section 3 of the above entitled act of March 3d, 1877, is void, because it attempts to levy different fees, for the same privilege, from different members of the same class. But it is immaterial, as it seems to us, whether the moneys demanded by the State of the defendant herein, under the provisions of said section 3 (section 3773, *supra*), are to be regarded as taxes for revenue or as license fees. In neither case is such section of the statute justly obnoxious to the charge of inequality in its provisions in the sense that would render it unconstitutional.

In *Phœnix Ins. Co.* v. *Welch*, 29 Kans. 672, a case very similar to the one now before us, the same objection was urged to the retaliatory section of the Kansas statute regulating foreign insurance companies doing business in that State, as the objection we are now considering to our statute; and it was held by the Supreme Court of Kansas that such objection was not well taken. The court there said: "The Legislature may classify for the purposes of taxation or license, and when the classification is in its nature not arbitrary, but

just and fair, there can be no constitutional objection to it. * * * * Here foreign insurance corporations are classified by the States from which they come, and when we consider the purposes of such classification, it can not be held that there is anything arbitrary or unjust therein. But, doubtless, this charge is not to be considered as within the constitutional restrictions as to taxation, but rather in the nature of a license or condition of entering this State and transacting business within its limits."

. What is here said by the Supreme Court of Kansas, upon the point under consideration, meets our full approval. Moneys which have or may become due to the State from any foreign insurance company, under the provisions of the retaliatory section of our statutes regulating foreign insurance companies doing business in this State, are or will be due and payable as a part of the terms or conditions of its entering this State and transacting business within its limits. Such retaliatory section of our foreign insurance company statutes, therefore, is not within our constitutional restrictions in relation to taxation.

Defendant's counsel are mistaken, we think, in their construction of such retaliatory section of our statute, when they assert, as they do, that in and by such section the General Assembly of this State have enacted, or have attempted to enact, "the laws of Pennsylvania on the subject of insurance into our statutes on that subject." Nothing of that kind is done, or is attempted to be done, in or by such section if fairly construed. Nor can it be said, with any degree of legal accuracy, that, by the enactment of such retaliatory section, the General Assembly of this State have " adopted," or have attempted to " adopt," the statute laws of the State of Pennsylvania, or any part thereof, upon the subject of insurance or upon any other subject. To the people and courts of this State, the statutes of the State of Pennsylvania on the subject of insurance, since such retaliatory section became a part of our law, have

The State, *ex rel.* Baldwin, Att'y Gen'l, *v.* The Ins. Co. of North America.

been, as they were before, facts merely, and as such they must be pleaded and proved by any party who relies upon their existence as constituting a part of his cause of action.

But we need not extend this opinion further, in the examination and consideration of the questions presented for decision in the case at bar. It is clear to our minds that section 3 above quoted, of the above entitled act of March 3d, 1877 (section 3773, *supra*), sometimes called and known as the retaliatory section of our statutes regulating foreign insurance companies doing business in this State, is not repugnant to or in conflict with any provision of our fundamental laws, State or Federal. But such section is, we think, a constitutional and valid exercise of legislative will, is not void for uncertainty, is susceptible of enforcement, and ought to be enforced upon the happening of the contingency therein mentioned. Similar legislation to that of our retaliatory section has been upheld as constitutional and enforced by the courts of last resort in the States of Georgia, Illinois, Kansas and New York. *Goldsmith* v. *Home Ins. Co.*, 62 Ga. 379; *Home Ins. Co.* v. *Swigert*, 104 Ill. 653; *Phœnix Ins. Co.* v. *Welch*, 29 Kans. 672; *People* v. *Fire Ass'n, etc.*, 92 N. Y. 311. See, also, as bearing upon the questions under consideration, *Insurance Co.* v. *Brim,* 111 Ind. 281, and *Phenix Ins. Co.* v. *Burdett*, 112 Ind. 204, and cases cited.

Our conclusion is, that the court below erred in sustaining defendant's demurrer to plaintiff's complaint herein.

The judgment is reversed, with costs, and the cause is remanded with instructions to overrule the demurrer to the complaint, and for further proceedings not inconsistent with this opinion.

Filed June 20, 1888.