THE SCOTTISH- UNION and NATIONAL INSURANCE COMPANY of Edinburgh, Scotland, and London, England, Appellant, v. JOHN HERRIOTT, Treasurer of State.

FOREIGN CORPORATIONS: *Constitutional law.* Code, 1897, section 1333, requiring all foreign insurance companies to pay a tax on their business in the state as a condition of their doing business within its limits, but discriminating in favor of domestic com panies and against foreign ones by imposing higher taxes on the latter, does not violate Constitution, article 1, section 6, providing that all laws of a general nature shall have a uniform operation, and that the General Assembly shall not grant to any citizen or class of citizens privileges which, upon the same terms, shall not equally belong to all. The right exists to exclude a foreign corporation, hence its being admitted may have special conditions annexed.

*Same.* Code, 1897, section 1333, requiring all insurances to pay a tax on their business done in the state as a condition of their doing business within their limits, is not a local or special law, within the meaning Constitution, article 3, section 30, prohibiting the passage of local or special laws for the collection of taxes.

*Same.* A tax imposed by Code, 1897, section 1333, requiring all insurance companies to pay to the state a certain per cent. of the premiums received for business done in the state as a condition of their doing business within its limits, is a tax on business, and not on property, and hence is not invalid, under Constitution article 8, section 2, providing that the property of a corporation shall be subject to taxation the same as individuals.

*Same.* There is no requirement, either in the Federal or State Constitution that a tax on the business of foreign corporations, imposed by a state as a condition of their doing business within its limits, shall be uniform upon all who are engaged in that business.

*Treaty rights.* A corporation organized in Great Britain, having its principal place of business in that country, is not a subject of that country within the meaning of a treaty giving subjects of that country the right to do business in any of the states of the United States on the same terms as natives.

Action Against State: WHAT IS NOT. A suit by a foreign insurance corporation against the state treasurer in his official capacity to recover taxes collected by him under Code, 1897, section 1333, requiring all insurance companies to pay to the state a certain

percentage of the premiums received on business done in the state as a condition of their right to do business within its limits, is not a suit against the state.

AGAINST STATE OFFICERS TO RECOVER TAXES.  Where a state officer, acting under the authority of a law, receives taxes paid to him under duress and protest, an action will lie against him for the recovery of the same if the law is invalid, although he has placed the money to the credit of the state.

VOLUNTARY PAYMENT:  *What is not.*  The payment, by a foreign corporation, under protest, of a license tax imposed by a state law claimed to be unconstitutional, will not be deemed voluntarily made when it was compelled, by threat of the auditor of which the treasurer knew, to pay in order to protect its property and continue its business in the state.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

FRIDAY, OCTOBER 27, 1899.

ACTION at law to recover taxes paid defendant as treasurer of state.  Defendant, in his individual capacity, filed a motion to be dismissed from the case, and his motion was sustained.  In his capacity as treasurer he filed a demurrer to the petition, which was also sustained, and plaintiff appeals.—*Affirmed.*

*McVey & McVey* for appellant.

*Milton Remley,* Attorney General for the State.

DEEMER, J.—Section 1333 of the Code of 1897 provides, in substance:  "That every insurance company or association organized or incorporated under the laws of any state or nation other than the United States shall, at the time of making its annual statement, as required by law, pay into the state treasury, as taxes, three and one-half per cent. of the gross amount of premiums received by it for business done in this state during the preceding year. And that every insurance company incorporated under the laws of any state of the United States, other than the state of

Iowa, shall pay a tax of two and one-half per cent. of the gross amount of premiums received by it for business done in this state during the preceding year. And that every other insurance company shall pay a tax of one per cent. of its gross premiums received after deducting the amount actually paid for losses and the amount of premiums returned during the preceding year. And that said companies shall take duplicate receipts therefor, one of which shall be filed with the auditor of state, and upon the filing of said receipt, and not till then, the auditor shall issue the annual certificate provided by law." No such law was in existence prior to the meeting of the extra session of the general assembly which passed that Code. Plaintiff is a corporation organized and doing business under the laws of the kingdom of Great Britain. Its stock is held by citizens and residents of that country, and at the time of the passage of the act in question it had a general office at Hartford, in the state of Connecticut, and was, and had for twenty years prior thereto been, doing business in the state of Iowa, having complied with all the laws permitting it to do business in this state. Plaintiff failed to make payment of the tax imposed by this act at the time it filed its annual statement, and in January of the year 1898 the auditor of state notified it of its deliquency, calling attention to the provisions of the act, and requiring payment of the amount imposed on or before January 31, 1898. He also notified it that, if the amount was not paid within the time mentioned, action would be taken for the collection of the tax by distress or suit, and that the company would be precluded from doing business in the state after the date named. On the last day of that month plaintiff paid the amount of the tax to the treasurer under protest, taking his receipt therefor, and received authority from the auditor to do business in the state for the year 1898. This action is to recover the tax so paid.

Some preliminary questions are to be disposed of before resorting to the merits. While error is assigned on

the ruling dismissing the defendant in his individual capacity from the case, appellant does not argue the assignment in its original brief, and hence it will be deemed waived. It is insisted that the action against the state treasurer is practically an action against the state, and that, under familiar principles, it cannot be maintained. *In re Tyler,* 149 U. S. 164 (13 Supt. Ct. Rep. 785), seems to establish the rule by which to determine this question. There we find this language: "Where a suit is brought against defendants who claim to act as officers of a state, and under color of an unconstitutional statute commit acts of wrong and injury to the property of plaintiff, to recover money or property in their hands unlawfully taken by them in behalf of the state, or for compensation for damages, or in a proper case for an injunction to prevent such wrong or injury, or for a mandamus in a like case to enforce the performance of a plain, legal duty, purely ministerial, such suit is not, within the meaning of the amendment, an action against the state." Again, in the *Virginia Coupon Case,* 114 U. S. 288 (5 Sup. Ct. Rep. 903, 962), that court held, in effect, that when a defendant, sued as a wrongdoer, seeks to justify by the authority of the state, he is bound to establish that the law under which he assumes to act is a valid law; that, if the law under which he justified is unconstitutional, it is, in effect, no law, and that he then stands stripped of his official character, and must answer personally for the invasion of plaintiff's rights. In *Smyth v. Ames,* 169 U. S. 466 (18 Sup. Ct. Rep. 418), we also find this pertinent language: "Within the meaning of the eleventh amendment of the constitution, the suits are not against the state, but against certain individuals charged with the administration of a state enactment, which, it is alleged, cannot be enforced without violating the constitutional rights of the plaintiffs. It is the settled doctrine of this court that a suit against

individuals for the purpose of preventing them, as officers of a state, from enforcing an unconstitutional enactment, to the injury of the rights of the plaintiff, is not a suit against the state, within the meaning of the amendment. *Pennoyer v. McConnaughy,* 140 U. S. 1, 10 (11 Sup. Ct. Rep. 699); *In re Tyler,* 149 U. S. 164, 190 (13 Sup. Ct. Rep. 785); *Scott v. Donald,* 165 U. S. 58, 68 (17 Sup. Ct. Rep. 265); *Tindal v. Wesley,* 167 U. S. 204, 220 (17 Sup. Ct. Rep. 770)." See, also, *In re Ayres,* 123 U. S. 443 (8 Sup. Ct. Rep. 164). Much more might be quoted from the cases already cited in support of the rule thus so clearly announced. The attorney general contends that no wrong is charged upon the treasurer. The record discloses, however, that the money was paid under threats from the auditor that he would enforce the collection of the tax, and revoke plaintiff's permission to do business in the state; and that it notified the treasurer, when it paid the money, that it did so under duress, and protested against paying the same; and that Herriott, as treasurer, collected and received said taxes without authority of law. True, there is no statement that defendant did any wrong other than to collect and receive the money, but it is averred that he had no authority of law either to collect or receive the same, and that he had notice and knowledge that plaintiff was paying the same under duress, and that the payment was not voluntary. If defendant were an individual receiving money obtained with his knowledge, through duress, and paid under protest, there would be no doubt of plaintiff's right to recover it back. The mere fact that he is the treasurer of state, acting under authority of law, will not relieve him if it should turn out that the law is unconstitutional, and therefore no law. We think an action will lie against the treasurer for money collected and received by him, provided it be established that the law under which he assumes to act is entirely invalid. That he may have placed the money

to the credit of the state, and with other funds belonging to it, is no defense, unless he was authorized to do so under a valid law.   Had he collected money wrongfully from an individual, without color of authority, we apprehend it would be no defense for him to say that he acted as treasurer, or that he had turned the money over to the state. Again, it is said that the money was paid voluntarily, and cannot be recovered back.   The petition recites, in substance, that plaintiff had large property interests in the state, which it was in duty bound to preserve and protect, and that the letter from the auditor of state made it impossible for plaintiff to continue its business, or to protect its property, without paying the tax.   At the time of the payment, plaintiff filed with both the treasurer and the auditor a written protest, in which it claimed that the tax was unconstitutional and invalid, and that by so paying it did not acknowledge its liability to pay the tax, or waive any of its right to contest the same.   Plaintiff was bound to submit to the exaction or discontinue its business.   Under such a state of facts it is clear that plaintiff's act was not voluntary, and that it may recover back the amount paid, provided it has established its claim that the act in question is unconstitutional.   *Swift Co. v. U. S.,* 111 U. S. 23 (4 Sup. Ct. Rep. 244); *Cunningham v. Munroe,* 15 Gray, 471; *Carew v. Rutherford,* 106 Mass. 1; *Beckwith v. Frisbie,* 32 Vt. 559; *Shelton v. Platt,* 139 U. S. 594 (11 Sup. Ct. Rep. 646); and cases cited in *State v. Nelson,* 41 Minn. 25, 4 Lawy. Rep. Ann. 300 (s. c. 42 N. W. 548).

II.   This brings us to the merits of the controversy. Does the act in question violate the constitution of this state, which requires that all laws of a general nature shall have uniform operation, and that the general assembly shall not grant to any citizen or class of citizens privileges or immunities which, upon the same terms, shall not equally belong to all citizens; that the general assembly shall not pass local or special laws for the collection of

taxes, nor in any case where a general law can be made applicable; that the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals? Does it conflict with the provisions of the federal constitution to the effect that no state shall abridge the privileges or immunities of citizens of the United States, nor deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws? Does it violate the civil rights act, found in the Revised Statutes as section 1977, providing that all persons within the jurisdiction of the United States shall have the same right to the full and equal protection of the laws for the security of property as is enjoyed by white persons, and be subject to like punishments, pains, penalties, taxes, and licenses, and exactions of every kind, and no other? Is it in contravention of the treaties between this country and Great Britain, which, by article 6 of the constitution, are made the supreme law of the land? These are the pivotal questions in the case, and to them we now turn our attention. Under the decisions heretofore rendered by this court it is clear that this statute has uniform operation. It applies alike to all belonging to any of the classes designated, and is uniform, not because it operates upon every person or corporation in the state, but because every person or corporation brought within the relations and circumstances provided for is affected by the law. *McAunich v. Railroad Co.,* 20 Iowa, 338; *Express Co. v. Ellyson,* 28 Iowa, 370; *Warren v. Henly,* 31 Iowa, 31; *Central Iowa Railway Co. v. Board of Supr's,* 67 Iowa, 199; *Bank v. Rerick,* 96 Iowa, 238; *Chicago, B. & Q. R. Co. v. Iowa,* 94 U. S. 155; *Owen v. City of Sioux City,* 91 Iowa, 190. This rule has been applied to classifications for the purposes of taxation. See cases cited above. The 6 clause of the state constitution prohibiting the grant of privileges or immunities to any citizen or class

of citizens not granted to others has reference to citizens or classes of citizens residing in the state, for it is uniformly held that a foreign corporation has no absolute right of recognition in other states, that it depends for its recognition and the enforcement of its contracts upon their assent, and a state is not prohibited from discriminating in the privileges it may grant to foreign corporations as a condition of their doing business within its limits. *Philadelphia Fire Ass'n v. People of New York,* 119 U. S. 110 (7 Sup. Ct. Rep. 108); *Paul v. Virginia,* 8 Wall. 168; *Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania,* 125 U. S. 181 (8 Sup. Ct. Rep. 737). For reasons already given, the law is not local or special, and its operation is uniform throughout the state. Whether the act is in contravention of the article of the constitution providing that the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals depends upon whether the tax in question is a tax on property, a tax upon a business or privilege, or a license tax or condition imposed as a prerequisite to the right of foreign corporations to do business in the state. We are willing to concede that, if the tax imposed by the act is simply a tax on property it is vulnerable to the constitutional provision just referred to, and perhaps interdicted by other provisions of both state and federal constitutions. But if it is a tax on business, or on the privilege of doing business in the state, or if it is simply a condition imposed by the state as a prerequisite to the right of the corporation to do business in the state, then it is not vulnerable to any constitutional provision. There is no requirement of either the federal or state constitution that taxes on business or on privileges shall be uniform. *Pembina Consol, Silver Mining & Milling Co. v. Pennsylvania, supra.* It is permissible for a state to exact a license fee, and also impose a tax on the business done. Cooley Taxation (1st ed.), pp. 385, 386; *People v. State Treasurer,* 31 Mich.

6; *People v. Thurber,* 13 Ill. 554. Again, one who pays taxes on his stock in trade as property may also be subject to a tax on his occupation or business. It is no objection to either of these taxes that the corporation was already doing business in the state when the act imposing them went into effect. In *Doyle v. Insurance Co.,* 94 U. S. 535, it is held that a state has the right to revoke or recall a permission already granted, and that a license to a foreign corporation to enter a state does not involve a permanent right to remain. No other authorities need be cited to sustain the proposition that there is no constitutional objection to imposing a tax on business, although that business may have been freely conducted before the adoption of the revenue measure. What, then, is the nature of the tax in question? The act requires of insurance companies the payment into the state treasury of a certain percentage of the gross amount of premiums received by them for business done in the state, and further provides that the auditor shall not issue a certificate to do business until these taxes are paid. This, it seems to us, partakes both of the nature of a tax on business and of a license tax or condition required of corporations to enable them to continue in business in the state. Appellant's counsel rely on *Express Co. v. Ellyson, supra,* as an authority for the proposition that the tax is a tax on property. We do not so regard it. The act there construed provided in express terms that the tax was a property tax, and should be assessed at the same rate as other personal property in the state. The income of the corporation was considered for the purpose of arriving at the value of their personal property, and for no other purpose. In the language of the opinion in that case it is said: "It simply prescribes the method whereby the amount of taxable personal property or moneys and credits of express and telegraph companies shall be ascertained; and this amount is made subject to taxation the same as the personal property or money and credits of individuals." The tax, when

thus levied and assessed, was to be collected in the same
manner as that levied upon the property of individuals.
There are no such provisions in the act under consideration.
By the terms of that act the company is required to pay
a certain percentage of its gross income directly into the
state treasury. No method is provided for the collection
of the tax, and the only penalty for nonpayment is revoca-
tion of authority to do business. Whether an ordinary
action at law would lie to recover the tax we need not
determine, for that is not essential to the solution of the
question as to the character of the tax. It is clearly a tax
on business, and not a tax on property, and the payment of
the tax is necessary to enable the corporation to continue in
that business. There is no restriction on the power of
the legislature to tax occupations. It may, therefore, tax
one, or it may tax all. Judge Cooley, in his work on Taxa-
tion (1st ed., p. 384), said that the methods in which busi-
ness may be taxed are in the legislative discretion, and that
the customary ones were: "(1) On the privilege of carrying
on business; (2) on the amount of the business done; (3)
on the gross profits of the business; and (4) on the net
profits, or profits divided." The tax imposed by section
1333 of the Code partakes of the nature of the first two
of these methods. Counsel for appellant, in one division
of his argument, concedes that the tax is not a tax on prop-
erty, and insists that it is a tax on the premium income
of the company. Fortified by this admission, we think we
are safe in saying that this is not a tax on property, but on
business done within the state. Plaintiff contends,
however, that, if it be conceded that this is a tax on
business, yet such tax must be uniform upon all who
are engaged in that business. If foreign corporations had
the absolute right to engage in business in this state, there
would be much force in the suggestion, but, as we have
seen, they have no such right, as they can only do business
in this jurisdiction with the assent of the state, and this assent

may be granted only upon compliance with certain expressed conditions. *In Ex parte Cohn,* 13 Nev. 424, it is expressly held that such a tax as the one here imposed is a tax on the business of insurance companies, and that the legislature may impose a higher rate upon foreign corporations than it does upon corporations organized under the laws of that state; and that such tax was a condition precedent to the right to do business within the limits of that state, and not an ad valorem tax on property. See, also, *State v. Lathrop,* 10 La. Ann. 398; *Insurance Co. v. Welch,* 29 Kan. 672; *State v. Insurance Co. of North America,* 115 Ind. 259 (17 N. E. Rep. 574). The constitutional difference between the rights of nonresident individuals and of foreign corporations is fundamental. The individual has a constitutional right to come within our jurisdiction, and to transact any lawful business therein. But foreign corporations have no such right. We may exclude them absolutely, or impose conditions upon their coming, and, having come, we may revoke the permission, unless they comply with the conditions imposed. *Pembina Consol. Silver Mining & Milling Co. v. Pennsylvania, supra; Horn Silver-Min. Co. v. People,* 143 U. S. 305 (12 Sup. Ct. Rep. 403); *People v. Roberts,* 171 U. S. 658 (19 Sup. Ct. Rep. 58).

We have already observed that the state is not prohibited from discriminating in the privileges it may grant to foreign corporations. In the *Pembina Consolidated Silver Mining Case. supra,* it is expressly held that the term "person," as used in the fourteenth amendment to the constitution, does not include foreign corporations. This significant language is used at the close of that opinion: "The only limitation upon this power of the state to exclude a foreign corporation from doing business within its limits, or to exact conditions for allowing the corporation to do business, arises where the corporation is in the employ of the federal government, or where its business is strictly

commerce, interstate or foreign.  The control of such commerce, being in the federal government, is not to be restricted by state authority."  When it is once conceded that a state has the right to impose conditions upon the right of foreign corporations to do business within its limits, it follows that it may divide such corporations into classes, and may impose conditions on one not imposed upon the other.  Such a result necessarily follows from its right to impose conditions, and there is no constitutional reason for saying that home and foreign corporations should be treated exactly alike.  The clause of our constitution requiring that the property of all corporations for pecuniary profit shall be subject to taxation the same as that of individuals has no application to the case.  It is not the property of the corporation that is taxed.

Our attention has not been called to any treaty with Great Britain that is violated by the act in question. True, the petition states in general terms that there is a treaty which gives to the subjects of Great Britain the right to reside in and do business in any of the states on the same terms and conditions as natives; that they shall be subject to the same rules, regulations, and taxes, and pay no higher or other taxes or imposts than those which may be levied on citizens and subjects of this state.  In the absence of reference to any such treaty, we are not called upon to decide the question presented.  If there be no more to the instrument than is charged, it is clear that it has no reference to the facts of this case.  Plaintiff is not a subject of Great Britain.  It is a corporation having its principal place of business in that country, but this does not make it a subject thereof. It may, under certain circumstances, be said to be a citizen, but it cannot, generally speaking, be a subject.

We have now considered all the objections lodged against the act, and, finding none of them tenable, the conclusion follows that the trial court was right in denying the relief asked and its judgment is AFFIRMED.