STATE OF NEBRASKA V. INSURANCE COMPANY OF NORTH
AMERICA.*

FILED MARCH 17, 1904.   No. 13,470.

1. **Foreign Insurance Companies.** The state may impose on a foreign corporation, as a condition of coming into and doing business within its territory, any terms, conditions and restrictions it may think proper, not repugnant to fundamental laws.

2. ———: LICENSE TAX: CONSTITUTIONAL LAW. The provision of section 33, chapter 43, Compiled Statutes, entitled "An act regulating insurance companies," passed in 1873, declaring that, whenever the laws of another state shall require of insurance companies incorporated in this state the payment of taxes and license fees, or otherwise, greater than the amount required for such purposes from similar companies of other states by the then existing laws of this state, then all insurance companies of such states shall be required to pay for taxes and license fees an amount equal to the amount of such charges and payments imposed upon or required by the laws of such state of the companies of this state, is a valid exercise of legislative power in no way inhibited by the fundamental law of the state or of the nation.

3. **Reciprocal Tax.** The imposition of the reciprocal tax and license fees provided by said section 33 is a privilege or license tax imposed as one of the conditions upon which a company, subject

---

* Rehearing allowed. See opinions, pp. 335, 341, 348, *post.*

to such tax or imposition, is admitted into this state, to engage in business herein.

4. Constitutional Law. The fact that the exaction may not be demanded in advance, and as a condition precedent to the entrance of the company into the state to do business, does not change or qualify the principle justifying the levying of such tax as one of the conditions for engaging in business in the state; and the laying of such burdens and the imposition of such tax and license fees in no way violates the provisions of section 1, article IX of our constitution.

5. ————: Foreign Corporations. The fact that the exactions provided by said section 33 are required only of those companies having their domicile in other states, the laws of which discriminate against outside companies, is neither arbitrary nor unreasonable classification, and does not contravene the second clause of said section of the constitution.

6. Statutes: Repeal by Implication. While repeals by implication are not favored, yet, where the later statute contains matter so repugnant to the earlier that both can not stand, the provisions of the earlier law must fall to the ground, and be deemed to have been repealed by implication by the later act.

7. ————: ————. When the legislature in the later act refers especially to a former act, and excepts from the operation of the last act a portion of the former, the inference is warrantable that there was an intention to repeal by implication inconsistent and repugnant provisions of the earlier statute not embraced within the terms of the exception clause.

8. ————: Construction. Where the words of a statute are so plain, specific, and unambiguous as to admit of no other construction, the meaning which the words import must be held conclusively presumed to be the meaning which the legislature intended.

9. Taxation: Constitutional Law. The provision of section 38, article I, chapter 77, Compiled Statutes, 1901, exempting insurance companies from all taxation save as therein expressed, is, in so far as it purports to exempt personal property of insurance companies from taxation, a violation of section 1, article IX of the constitution, and as to the taxation of such property is of no force and effect.

10. Repugnancy. Ordinarily, a statute repugnant in some of its features to some constitutional provision will yield only to the extent of the repugnancy and no further.

11. Statutes: Validity. Where the act eliminating the unconstitutional feature is complete in all respects, and capable of enforce-

24

ment, it will be held valid and enforceable, except where the invalid portion was manifestly an inducement to the passage of the remainder.

12. ———: REPEAL BY IMPLICATION. Section 38, chapter 77 of the revenue act of 1879, as amended in 1887, being repugnant and inconsistent with the reciprocal tax feature of section 33, chapter 43, passed in 1873, to the extent of such repugnancy and inconsistency, repeals the latter mentioned section by implication.

ACTION by the state against the Insurance Company of North America to recover taxes imposed by section 33, chapter 43, Compiled Statutes: *Demurrer to answer overruled and action dismissed.*

*Frank N. Prout, Attorney General,* and *Norris Brown,* for the state.

*Greene, Breckenridge & Kinsler, contra.*

HOLCOMB, C. J.

In 1873 the legislature passed a law relating to the business of insurance entitled "An act regulating insurance companies." Compiled Statutes, 1901, ch. 43. The law took effect and was in force from and after June first of that year. By section 32 of the act it was provided that certain fees therein enumerated should be paid by every company doing business in this state to which the act applied. These fees were for services by the state auditor for filing, and making an examination of the first application; issuing certificates of license; filing annual statements; issuing certificates of authority; for copying papers and certifying to the same, etc. Section 33 of the act is set forth in full in the following language:

"Whenever the existing or future laws of any other state of the United States shall require of insurance companies incorporated by or organized under the laws of this state, having agencies in such other state, or of the agents thereof, any deposit of securities in such state, for the protection of policy-holders, or otherwise, or any payment for taxes, fines, penalties, certificates of authority,

license fees, or otherwise, greater than the amount required for such purposes, from similar companies of other states, by the then existing laws of this state, then, and in every such case, all companies of such states establishing, or having theretofore established an agency or agencies in this state, shall be and are hereby required to make the same deposit, for a like purpose, with the auditor of this state, and to pay said auditor for taxes, fines, penalties, certificates of authority, license fees, or otherwise, an amount equal to the amount of such charges and payments imposed upon or required by the laws of such state, of the companies of this state, or the agents thereof."

In the case at bar, the state prosecutes an action to recover of the defendant insurance company, under the provisions of the section quoted, two per cent. of the amount of the gross premiums received by the defendant company in this state during the year 1902. The petition alleged, in substance, that while domestic insurance companies are by the laws of Pennsylvania, the domicile of the defendant, required to pay but eight mills on the dollar upon the amount of the gross premiums received, insurance companies of other states and countries are required to pay into the treasury of said state two per cent. on the amount of the gross premiums received by them respectively, and prays a recovery of a like percentage of the gross premiums collected in this state by virtue of the provisions of said section 33. By the answer filed, the validity of the section quoted and the legality of the demand made by the state are challenged on three different grounds. It is alleged that the attempted imposition of the amount sought to be collected is contrary to section 1, article IX of the constitution, providing for the levying of a tax by valuation and uniformity of taxation, and which section reads as follows:

"The legislature shall provide such revenue as may be needful, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to the value of his, her or its property and franchises, the value

to be ascertained in such manner as the legislature shall direct, and it shall have power to tax peddlers, auctioneers, brokers, hawkers, commission merchants, showmen, jugglers, inn-keepers, liquor dealers, toll bridges, ferries, insurance, telegraph and express interests or business, venders of patents, in such manner as it shall direct by general law, uniform as to the class upon which it operates.". It is also alleged that the section quoted is repealed by implication by the revenue law of 1879 (section 38, chapter 77, Compiled Statutes), and the amendatory section as enacted by the legislature in 1887. It is further alleged that the imposition of the tax sought to be collected is unauthorized, because no insurance company organized under the laws of Nebraska has ever had any agent or agency in the state of Pennsylvania, and has never been admitted to do business therein, and that companies created under the laws of Nebraska have never been able to comply with the laws of Pennsylvania with respect to the admission of insurance companies to transact business in said state. It is regarded as neither advisable nor proper to attempt a discussion or consideration of that part of the answer of the defendant last above referred to, and the same will not be further noticed in the further consideration of the case. The state has filed a demurrer to the answer of the defendant, raising thereby issues of law only in respect of the defenses interposed of which we have just made mention.

Section 33 of the act of 1873 may be euphemistically called by some a reciprocal provision in the insurance law; while counsel for defendant insists on its being more properly denominated by the more harsh appellation of a retaliatory measure. Whatever may be the proper designation of the act as to its nature and characteristics, such legislation seems to be generally regarded as eminently just and fair, and based upon acknowledged sound. legal principles. Such an act asserts only the self-respect and dignity of a sovereign state, justly maintained in its business relations and dealings with other commonwealths.

While extending comity and inviting friendly commercial intercourse, it demands reciprocal equality and fairness as a basis for such transactions. The state, while ready to acknowledge the courtesy due to sister states and the corporations created under their laws, insists that our own corporations, formed and fostered under the laws of this state, shall receive the same consideration and protection which this state accords to the corporations coming here from other states to engage in business within the limits of our own state. The principle justifying legislation of the character under consideration seems to be so firmly established, and with such unanimity of sentiment, as evidenced by the opinions of the courts of last resort in the many adjudicated cases elsewhere, that it seems unnecessary to engage in any extended discussion in its support. It is said by the supreme court of Indiana in *State v. Insurance Co. of North America* (the company here litigating), 115 Ind. 257, 265:

"The principle that a state may impose on a foreign corporation, as a condition of coming into or doing business within its territory, any terms, conditions and restrictions it may think proper, that are not repugnant to the constitution or laws of the United States, is firmly established by the decisions of the supreme court of the United States. *Bank of Augusta v. Earle,* 13 Pet. (U. S.) *519; *Lafayette Ins. Co. v. French,* 18 How. (U. S.) 404; *Paul v. Virginia,* 8 Wall. (U. S.) 168; *Ducat v. Chicago,* 10 Wall. (U. S.) 410; *Doyle v. Continental Ins. Co.,* 94 U. S. 535."

The authority and power of a state, by proper legislation, to impose additional burdens and conditions upon an insurance company of another state, where the laws of the state of its creation discriminate in favor of such company and against those of other states and countries, such as is sought to be done by the provisions of section 33, heretofore quoted, are recognized, approved and upheld by the supreme court of the United States and the supreme courts of several of the different states of the Union. With but one exception, in so far as our investigation of the matter

has extended, all the courts which have been called upon
to express themselves on the subject are of one mind in
maintaining the validity of such legislation. *Philadelphia
Fire Ass'n v. New York,* 119 U. S. 110; *People v. Fire
Ass'n of Philadelphia,* 92 N. Y. 311; *Phœnix Ins. Co. v.
Welch,* 29 Kan. 672; *State v. Fidelity & Casualty Co.,* 77
Ia. 648; *Germania Ins. Co. v. Swigert,* 128 Ill. 237, and
*State v. Insurance Co. of North America, supra.* The ex-
ception mentioned is from the supreme court of Alabama,
which holds such legislation to be a delegation of legisla-
tive power, and therefore invalid. Upon legal principles
of general application and under the authorities cited, it
can hardly be doubted that the enactment of the pro-
visions of section 33, heretofore quoted, is clearly a con-
stitutional exercise of legislative power in no way in-
hibited by the fundamental law of the state or the nation.
Were it solely a question of the power of the legislature
to provide for the reciprocal features found in the above
mentioned section, we should not hesitate to declare there
is no legal obstacle in the way of the state's recovery in
the present action.

It is contended, however, by counsel for defendant that,
while the legislature may have the power to levy a tax on
foreign insurance companies by way of a license or priv-
ilege tax, such power has not been exercised by the pro-
visions of section 33, and that the exaction therein pro-
vided for is purely a tax for revenue purposes, and the
test of its validity is to be determined by the application
of the same principles as those governing the levying and
collection of a property tax. It is argued that the license
fees, authorizing the defendant to do business in this state,
are provided by section 32, of which mention has been
made, and that the company having once entered the state
to engage in business must then be placed upon the same
plane as all other companies engaged in a like business,
and that the enforcement of the tax sought to be recovered
violates the rule of uniformity required by section 1, ar-
ticle IX of the constitution. We find ourselves unable to

accept this argument as convincing. It is, we think, the manifest intention of the legislature to provide for the exaction which is sought to be imposed herein as a privilege or license tax as one of the conditions on which the company is admitted into the state to engage in business herein. That is, the legislature has declared, that the company's right and authority to enter and engage in business in this state is dependent on its compliance with the provisions of section 32 as to the fees therein required to be paid as a condition precedent, and also compliance with the provisions of section 33, whenever those provisions become applicable. The provisions of the latter section are an additional burden and exaction to those contained in section 32 on those companies, only, upon which the section is intended to operate. It says to the corporation doing business in this state having its domicile in another state, the laws of which discriminate against those companies engaged in a like business therein from other states or countries, that, in addition to the general requirements as to fees and licenses under section 32, you must also meet the same extra burdens and exactions required by the laws of your home state of outside companies doing business therein. The principle justifying the provision is in no wise changed or qualified, by reason of the fact that the exaction may not be demanded in advance and as a condition precedent to entrance into the state. It is sufficient if it is one of the conditions imposed, not only as a right to enter the state, but to continue to do business herein. It is an obligation assumed and is a part of the conditions to be complied with for the privilege of engaging in business in the state, and may be enforced in any proper manner when the exaction becomes due. What is said by the supreme court of Indiana in *State v. Insurance Co. of North America, supra,* is here quite apropos. Say the court:

"Moneys which have or may become due to the state from any foreign insurance company, under the provisions of the retaliatory section of our statutes regulating foreign

insurance companies doing business in this state, are or will be due and payable as a part of the terms or conditions of its entering this state and transacting business within its limits. Such retaliatory section of our foreign insurance company statutes, therefore, is not within our constitutional restrictions in relation to taxation."

In relation to a tax upon the gross earnings of insurance companies doing business in this state which, on principle, is of the same nature as the imposition sought to be enforced in the case at bar, in the very recent case of *State v. Fleming*, 70 Neb. 523, it is said:

"Relating to the provisions of sections 59 and 60, it is plain that the tax of 2 per cent. upon the gross earnings of the companies mentioned in these sections is a tax imposed, not upon their property, but upon their privilege of doing business in this state."

Such a tax, say this court, is not in any sense a tax upon the property of these corporations, but a privilege tax and, as such, is wholly unobjectionable.

There remains to be considered another feature of the provisions of section 33 in this same connection. It is urged that the selection, for the purposes of the exactions of the nature sought to be imposed in the present case, of those companies only having their domicile in another state, the laws of which discriminate against outside companies, is an arbitrary and unreasonable classification, not at all warranted under the second clause of section 1, article IX of the constitution, and that, because of such attempt at arbitrary classification, the act can not stand. As it occurs to us, a sufficient answer to this contention is that, when the principle underlying the right to levy a tax or exaction such as we are discussing is admitted or is established, there is included in the proposition the idea of reasonableness, and an acknowledgment of the propriety of the classification. In order to make the operation of an act of this nature effective, there must be a classification both as to states and the character of the burden. The principle would be of no utility, and there

could be no practical application, unless the companies against which the act should operate might, by the legislature, be restricted to those states, only, and to the kinds of burdens and exactions imposed by the laws of each individual state whose laws, in respect to the same matter, render the reciprocal legislation proper and necessary to effectuate the desired purpose. The classification is not only wholly devoid of arbitrary features, but is founded upon considerations of the most reasonable kind and altogether appropriate to the object sought to be attained. Say the supreme court of Kansas, in *Phœnix Ins. Co. v. Welch, supra:*

"It matters not whether this charge upon the plaintiff is to be regarded in the nature of taxation, or a license. In neither case is it justly obnoxious to the charge of inequality in the sense that would make it unconstitutional. The legislature may classify for the purposes of taxation or license, and when the classification is in its nature not arbitrary, but just and fair, there can be no constitutional objection to it. * * * Here foreign insurance corporations are classified by the state from which they come, and when we consider the purposes of such classification it can not be held that there is anything arbitrary or unjust therein."

The rule announced in *Rosenbloom v. State,* 64 Neb. 342, on the subject of classification under the second clause of section 1, article IX, obviously gives warrant for the views expressed herein regarding the same matter.

The more serious problem to consider and determine in disposing of the present case, as we view the subject, is regarding the contention that section 33, chapter 43, or at least that portion thereof referring to the imposition and enforcement of a reciprocal tax, such as is herein sought to be recovered, is repealed by the enactment of the general revenue law of 1879 known as chapter 77, article I, of the Compiled Statutes, 1901, and especially section 38 thereof. The act is entitled "An act to provide a system of revenue." It, in express terms, repeals "all acts and parts

of acts inconsistent with the provisions of this act." Section 38, as originally enacted, provided for a tax upon the gross amount of premiums received by insurance companies within the state, during the previous year, and declared that "Insurance companies shall be subject to no other taxation under the laws of this state, except taxes on real estate, and the fees imposed by the chapter on insurance." Relative to the contention that this section, as originally enacted, repeals by implication that part of section 33, chapter 43, now under consideration, we are prone to the•belief that the word fees should not be given a narrow and technical meaning, as argued by counsel for defendant, but rather be accepted in its broad and most comprehensive meaning, which, in view of the rule that repeals by implication are not favored, would probably justify the construction that all license fees or taxes in the nature of a privilege to do business in this state, as contemplated by both sections 32 and 33, would be included within the exception mentioned, and come fairly within the meaning of the words except "fees imposed by the chapter on insurance." It is profitless, however, to discuss this phase of the subject, as nothing could be gained thereby save, possibly, the ascertainment of rights and obligations of a moral rather than of a legal character. In 1887, section 38, chapter 77, as originally enacted, was amended by the legislature, the amending act being entitled "An act to amend section thirty-eight of an act entitled 'An act to provide a system of revenue.'" The section as amended provided for the levying of a tax on the net amount of premiums received instead of the gross amount, as before provided for. The section as amended also declared that "Insurance companies shall be subject to no other tax, fees, or licenses under the laws of this state, except taxes on real estate and the fees imposed by section 32 of an act regulating insurance companies, passed February 25, 1873." It will be observed that, not only was the basis for levying a tax changed from the gross amount to the net amount of the premiums received,

but that also, in specific terms, it was declared that no
other tax, fees, or licenses under the laws of the state
should be exacted from such companies, except taxes on
real estate and the fees imposed by section 32, only, of the
act of 1873 regulating insurance companies. It is difficult
to conceive of the use of more specific language which
might be employed, with a view of prohibiting all other
forms of taxation than the general tax provided by the
amended section 38, chapter 77, and the fees imposed by
section 32, chapter 43, being the act regulating insurance
companies and passed in 1873. Judging from the language
found in the amended section, it is difficult to escape the
conclusion that the amendment was intended to, and
necessarily did, have the effect of repealing by implication
the provisions of section 33 of the act of 1873 under con-
sideration.   The two sections are so repugnant to each
other that both can not stand.  If the reciprocal tax sought
to be collected in this action is now enforced, then, obvi-
ously, the company is subject to other taxes and fees,
under the laws of this state, than a tax on premiums re-
ceived, and taxes on real estate, and the fees imposed by
section 32 of the act regulating insurance companies.   It
is manifest that, in the enactment of the revenue law of
1879 and especially the provisions found in section 38, the
legislature had in mind the prior legislation affecting in-
surance companies, for the act of 1873 is specifically men-
tioned in the exception of the fees therein provided for, as
not coming within the general exception of the laying of
other taxes and impositions than those contemplated by
section 38.   As has been suggested, the exception in gen-
eral terms of the fees provided for by the prior chapter on
insurance, is probably susceptible of the construction that
the reciprocal tax feature of section 33 of that chapter,
as one of the conditions of an insurance company entering
and engaging in business in this state, would come within
the terms of the exception and would not be construed as
being repealed by implication by the later act.

But, by the amendment of 1887 of section 38 of the

revenue act, the legislature has not only again referred to the prior chapter on insurance, but has gone to the extreme limit in the expression as to what fees provided for by that act shall come within the exception clause, and has said in words that need no explanation or construction that the fees provided for by section 32, only, of that chapter shall be exacted from the insurance companies doing business in this state, in addition to the taxes on premiums as provided by section 38 of the revenue act, and taxes on real estate. The maxim, *expressio unius est exclusio alterius,* would seem applicable, resulting in the warrantable inference that the legislature intended to exclude the reciprocal tax feature contained in section 33. Had there not been in section 38, as originally enacted or as amended, special reference to the prior chapter on insurance, but only an exception clause general in its · character, we would, in construing such a statute, be warranted, perhaps, in saying that the exception referred only to taxes and impositions laid primarily for revenue purposes, and had no bearing on the chapter on insurance, because the chief object of the latter is regulation of the insurance business, rather than the raising of revenues. It may possibly be that the legislature did not fully appreciate the legal effect of the enactment of the amendment to section 38, but the thought suggests itself to one's mind that those especially interested in legislation favorable to insurance companies, who are usually in convenient calling distance with suggestions and advice during legislative sessions, by their shrewdness and *finesse,* have brought about a declaration by the legislature, in unmistakable terms, in the passage of the law which operates as a repeal by implication of the provisions of section 33 authorizing a reciprocal tax, as effectually as though the repeal was in express terms. The words in section 38 as amended are so plain, so specific, so unambiguous, that they admit of no other construction. The meaning which the words import must, we think, be held conclusively presumed to be the meaning which the legislature intended to convey; in other words,

the statute must be interpreted literally. "Even though the court should be convinced that some other meaning was really intended by the lawmaking power, and even though the literal interpretation should defeat the very purposes of the enactment, still the explicit declaration of the legislature is the law, and the courts must not depart from it." Black, Interpretation of Laws, ch. 3, sec. 26. *Stoppert v. Nierle*, 45 Neb. 105; *State v. Moore*, 45 Neb. 12; *Woodbury & Co. v. Berry*, 18 Ohio St. 456; *McCluskey v. Cromwell*, 11 N. Y. 593; *Doe v. Considine*, 6 Wall. (U. S.) 458. In an early case in this court, *People v. Weston*, 3 Neb. 312, in speaking of the repeal of statutes by implication, it is observed by Mr. Justice GANTT who wrote the opinion (p. 323) :

"In the case of the *Town of Ottawa v. La Salle*, 12 Ill. 339, it is said that 'it is a maxim in the construction of statutes that the law does not favor a repeal by implication. The earliest statute continues in force unless the two are clearly inconsistent with, and repugnant to each other, or unless in the latest statute some express notice is taken of the former, plainly indicating an intention to repeal it. And when two acts are simply repugnant, they should, if possible, be so construed that the later may not operate as a repeal of the former by implication." Citing Dwarris, Statutes, 674; Bacon's Abridgment, title Stat. D; *Bowen v. Lease*, 5 Hill (N. Y.), 221; *Planters Bank v. State of Mississippi*, 6 Smed. & M. (Miss.) 628; *Hirn v. State of Ohio*, 1 Ohio St. 15.

In *State v. McCaig*, 8 Neb. 215, it is held that, where statutes or parts of the same statute are so repugnant to each other that both can not be executed, the latter is always deemed a repeal of the earlier. It is said in the opinion, quoting approvingly from *Brown v. County Commissioners*, 21 Pa. St. 37 :

"Where two statutes are so flatly repugnant that both can not be executed, and we are obliged to choose between them, the later is always deemed a repeal of the earlier. This rule applies with equal force to a case of absolute

and irreconcilable conflict between different sections or parts of the same statute. The last words stand, and the others which can not stand with them go to the ground." See also *White v. City of Lincoln*, 5 Neb. 505, 514; *Lawson v. Gibson*, 18 Neb. 137; *State v. Bemis*, 45 Neb. 724; *State v. Moore*, 48 Neb. 870; *State v. Magney*, 52 Neb. 508.

The attorney general, as we understand his presentation of the case, concedes that section 38, chapter 77, as amended does repeal by implication that part of section 33 under which a recovery is sought, if the amended section be held valid. But it is argued by him that such section is unconstitutional and, for that reason, can not have the effect of repealing section 33 of chapter 43 or any part thereof. It is urged in support of the contention, that the attempted legislation found in the original section and the amendment thereto is in direct violation of section 1, article IX of the constitution, providing for the raising of needful revenue by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to his, her or its property and franchises, and that, because personal property of insurance companies is attempted by this section to be exempted from taxation, the fundamental law is violated. We are quite well satisfied that the attempted exemption from taxation of personal property is in direct contravention of the fundamental law. But, if such be the case, does it necessarily or legally follow that the entire section must be held invalid? We think not. The rule ordinarily is that a statute repugnant to some constitutional provision will yield to the extent of the repugnancy and no further. *Scott v. Flowers*, 61 Neb. 620; *State v. Karr*, 64 Neb. 514; *State v. Fleming*, 70 Neb. 523. The principle deducible from these several cases is of peculiar force and special application to section 38. The act is complete in all respects and is capable of enforcement. The unconstitutional feature is of a negative rather than of a positive character. The exemption from other taxes can not extend to personal property without conflicting with con-

stitutional provisions. As a question of practical application and results the matter is of but little importance, because companies from other states maintaining agencies in this state usually have but little, if any, personal property subject to taxation. But the provision attempting to exempt personal property, as to such exemption, must yield to the superior law, and the personal property of the insurance company held to be assessable, wherever found, as is all other personal property. In so far as the section permits personal property to escape taxation, it must be held without legal force and effect, but otherwise it stands as a valid legislative enactment. The legal result would be that insurance companies must pay taxes on their personal property, on their real estate, on the net amount of premiums received, and must also pay the fees provided by section 32 of chapter 43, and that no other tax, fees or licenses under the laws of this state can be lawfully levied on such companies. The law being valid in all other respects and capable of enforcement, and, by its express terms, being utterly repugnant and inconsistent with the reciprocal tax feature of section 33, so that one or the other must fall, we are driven to the conclusion that section 38, as amended in 1887, repeals by implication that part of section 33 of the act of 1873 providing for the exaction which is sought to be enforced in the case at bar. The answer in respect of this phase of the case states a good defense and, for the reasons given, the demurrer thereto should be overruled and judgment entered dismissing the action, which is accordingly done.

DISMISSED.

The following opinion on rehearing was filed June 30, 1904. *Demurrer to answer sustained:*

1. **Statute:** VALIDITY. Where a part of an act is unconstitutional, because contravening some provision of the fundamental law, the language found in the invalid portion of the act can have no legal force or efficacy for any purpose whatever.

2. ———: REPEAL BY IMPLICATION. That part of the revenue act (Compiled Statutes 1901, ch. 77, art. I, sec. 38), providing "Insurance companies shall be subject to no other tax, fees, or licenses under the laws of this state, except taxes on real estate and the fees imposed by section 32 of an act regulating insurance companies, passed February 25, 1873," being unconstitutional because attempting to exempt insurance companies from the payment of taxes on personal property, is void and of no effect for any purpose, and can not, therefore, operate as a repeal by implication of the provisions of section 33, chapter 43, Compiled Statutes, or any portion thereof.

3. Insurance Companies: TAXATION. The fact that a less reserve fund is required of domestic companies organized under the laws of this state, than is required of all companies doing business in the state of Pennsylvania under its laws, does not militate against the enforcement of the provisions of the reciprocal tax law on companies organized under the laws of Pennsylvania, and doing business in this state, such reciprocal tax law being otherwise applicable and enforceable.

4. Reciprocal Tax Law. The provisions of said section 33, chapter 43, Compiled Statutes, for a reciprocal tax on insurance companies organized under the laws of other states, whose laws discriminate against insurance companies organized under the laws of the state of Nebraska, apply and become operative from the time of the enactment of such laws by such other states requiring companies of this state to make deposits, or pay fines, taxes, penalties or license fees not required of all other companies, whether any company of this state shall have established agencies there or not.

5. ———. The act mentioned is in force and effect, and requires a foreign insurance company doing business in this state to pay the same license fees, etc., required by the laws of the foreign state of companies of this state doing business therein, whenever the existing or future law of such other state shall require companies of this state to pay license fees, etc., for the privilege of doing an insurance business therein.

HOLCOMB, C. J.

Section 38, article I, chapter 77 of the revenue law, as it existed prior to the 1903 enactment, provided that every insurance company transacting business in this state should be taxed upon the excess of premiums received over losses and ordinary expenses incurred within the state, during the year previous, and at the same rate that

all other personal property is taxed.  The section closed as follows:

"Insurance companies shall be subject to no other tax, fees or licenses under the laws of this state, except taxes on real estate and the fees imposed by section 32 of an act regulating insurance companies, passed February 25, 1873."

In the opinion handed down in this case, it is held that the provision quoted, in so far as it purported to exempt insurance companies from the payment of taxes on personal property, is in contravention of section 1, article IX of the constitution, providing for the raising of needful revenues, by levying a tax by valuation, so that every person and corporation shall pay a tax in proportion to his, her or its property and franchises, and it is also held that, notwithstanding the unconstitutional feature referred to, yet, the section as a whole would yield only to the extent of the repugnancy, and otherwise would be enforceable, and that the effect of the part of the section quoted, notwithstanding its invalidity in so far as it attempted to exempt personal property from taxation, was to repeal by implication the reciprocal tax feature found in section 33, chapter 43, Compiled Statutes.  In arriving at the conclusion announced in the former opinion, the mind of the writer was centered especially on the exception clause contained in the sentence wherein certain exactions were excepted from the exemption generally of all other forms of taxation or other exactions; and, by applying the familiar rule that a statute will yield only to the extent of the repugnancy, it was believed that the legal effect was to add personal property to the exception clause, and that the section otherwise would remain a valid enactment and operate as a repeal by implication, as therein announced.  Further consideration of the matter leads to the conclusion that the latter provisions of the section referred to, eliminating the unconstitutional part, were incorrectly construed.  We are satisfied with the holding that the purported exemption of personal

property from taxes is an unconstitutional exercise, of legislative power. We think there can be no doubt but that the attempted exemption of personal property from taxation contravenes the fundamental law, and that the section of the revenue act, in so far as it purports to do this, is invalid. *State v. Poynter,* 59 Neb. 417. We were, we think, in error in holding to the view that the section in this respect was invalid, and at the same time that it operated as a repeal by implication of the reciprocal tax provision of section 33 of the act of 1873. The effective words of the section, those which contravene the fundamental law and which must be held unconstitutional, are found in the clause, "Insurance companies shall be subject to no other tax, fees or licenses, under the laws of this state." These are the words which purport to exempt insurance companies from taxation on their personal property. Such attempted exemption is invalid, as was held in the former opinion. The legislature can not, after providing for a tax on net receipts, say that insurance companies shall be subject to no other tax, under the laws of this state. This language is as repugnant to the constitution as would be the case if no exception were made regarding taxes on real estate. Personal property can not be exempted any more than real estate, nor can both together. The words found in the invalid portion of the section, those which declare that insurance companies shall be subject to no other tax, fees or licenses, under the laws of this state, are the only words which can effectuate a repeal by implication of the reciprocal tax feature of section 33 of the act of 1873. No language can be found which can be appealed to as repealing by implication the provisions of the act under which a recovery is sought in this case, except the language of section 38 quoted, and that which we say is inimical to the constitution. That part of the act, therefore, which attempts to relieve insurance companies from other taxes, fees and licenses than those mentioned, being void, for the reasons stated, is void for all purposes, and as though it had never been enacted

by the legislature, and therefore has no legal force and efficacy for any purpose. *Bowles v. Ferguson,* 55 Neb. 565. Such being the case, there is no repeal by implication of any part of section 33, chapter 43 of the laws of 1873, and the former opinion holding to the contrary is therefore disapproved.

Having reached the conclusion just announced, it becomes necessary to consider one further point in the case, which was only mentioned, but not discussed or passed on in the former opinion. It is contended by counsel for the defense that the retaliatory law of this state can not be enforced against the defendant, a company incorporated under the laws of Pennsylvania, because no Nebraska company is incorporated, or can be incorporated, pursuant to the laws of this state, which does or can conform to the requirements made by the state of Pennsylvania of all insurance companies doing business therein. The argument in support of the proposition is predicated on the theory that a larger reserve is required of fire insurance companies doing business in Pennsylvania, by the laws of that state, than is required by companies organized and doing business under the laws of this state. It is said, companies created under the laws of this state do not maintain any such reserve, and are required to keep only a less percentage of their premiums, and that they may pay out the excess in dividends without violating any provisions of law. There is nothing in the argument which even remotely suggests the inability of Nebraska companies to fully, and in all respects, comply with the law and requirements of the state of Pennsylvania. The fact that they may operate upon a different plan or with a smaller reserve, under the laws of this state, than is required by the state of Pennsylvania, does not argue that they can not and do not measure up to the standard set by the laws of the latter state, and may not enter into that state, and engage in business therein, along with the domestic companies, or those organized under the laws of other states. If all are on common ground, in a fair field, with

no favors, there is no tenable ground for saying that Nebraska companies have not the ability to successfully compete with all others. If our companies do not engage in business in Pennsylvania, it may fairly be inferred that it is because of discrimination against outside companies, and not on account of the provisions of law, equally applicable to all companies, which may in some respects differ from the laws governing their creation and authority to do business in their home state. We may assume that the sole reason no Nebraska companies are doing business in Pennsylvania, if such be the case, is because of the severity of the restrictions imposed by the laws of Pennsylvania upon insurance companies organized under the laws of other states, which are not applicable to domestic companies. *Germania Ins. Co. v. Swigert,* 128 Ill. 237; *Phœnix Ins. Co. v. Welch,* 29 Kan. 672, and *State v. Fidelity & Casualty Co.,* 77 Ia. 648, all support the right of enforcement of the reciprocal tax law, regardless of the question of the establishment of an agency, or the attempt to do business, in the state against whose companies the law is made to operate. The law is effective when conditions it provides for are existent. If the laws of Pennsylvania are such as were contemplated by the legislature in the enactment of section 33, then those provisions are at once operative upon companies seeking to do business in the state, which are incorporated under the laws of that state, whether or not Nebraska companies have agencies established in Pennsylvania or whether, under the laws of this state, they may do business on a plan different from all companies doing business in Pennsylvania. In *Germania Ins. Co. v. Swigert, supra,* it is held, under a law in all essential features the same as the one under consideration, that the provisions of such a law apply, and become operative, from the time of the enactment of such laws, by other states, requiring companies of this state to make deposits or pay fines, taxes, penalties or license fees, whether any company of this state shall have established agencies there, or not. It is also held that such a

law is operative and in force, and requires a foreign insurance company, doing business in this state, to pay the same license fees, etc., required by the laws of the foreign state of companies of this state doing business therein, whenever the existing or future law of any other state shall require companies of this state to pay license fees, etc., for the privilege of doing an insurance business therein.   The other authorities cited fully support the Illinois case.   The former judgment overruling the demurrer to the answer is vacated, and the demurrer is sustained.   Judgment will be entered in conformity therewith.

JUDGMENT ACCORDINGLY.

The following opinions on motion for rehearing were filed March 23, 1905.  *Rehearing denied:*

The judgment heretofore entered in this cause adhered to.

HOLCOMB, C. J.

It is contended that the reciprocal tax law is repealed by implication.  If the law is in fact repealed by implication, it must be upon the ground that another valid law exists, the enforcement of which is necessarily so inconsistent and repugnant as that both laws can not stand; the former, in such a case, being held to be by implication repealed.  This method of repealing is not, of course, favored by the courts, and such a repeal is never effected, save there is a subsequent valid enactment wholly repugnant to the older law.  If there is no valid law, there can be no repeal, and no law can be held to effect a repeal by implication where it has no other purpose to subserve than that of repealing the prior enactment.  That can only be accomplished by an express repealing statute.  The act (Compiled Statutes, 1901, ch. 77, art. I, sec. 38) providing for taxing the net premiums of insurance companies says: "Insurance companies shall be subject to no other tax, fees or licenses, under the laws of this state."  The

clause is followed by some exceptions, which need not be noted. Now if this clause is valid, of course it operates as a repeal by implication because its enforcement is utterly repugnant to the law providing for a reciprocal tax; if, however, it is unconstitutional because of its attempted exemption of personal property, then it can not be effective as a repeal by implication, because it would serve no purpose save as an express repeal of a prior statute. I find no authority which, as it seems to me, would justify the conclusion that, although the clause is unconstitutional in so far as it attempts to exempt personal property from tax, yet is valid for the purpose of effectuating a repeal by implication. The case is not the same as it would be were there some other property generally subject to taxes, but which the legislature might lawfully exempt.

The question is not of exemption of property that might be exempted, but of repeal by implication of an otherwise valid and enforceable statute. When this court said that an unconstitutional act is as ineffectual as though it had never been passed (*Boales v. Ferguson,* 55 Neb. 565), it stated what I conceive to be a truism, applicable to every word and syllable of an act held unconstitutional, whether it be a section, a part of a section, a sentence or a clause, which is found by the court to be in conflict with some higher law. What the courts have said in the way of what may be termed modifications, qualifications or exceptions to the rule, does not lessen the force of the proposition. An unconstitutional law is for all purposes as though it had never been passed. *Finders v. Bodle,* 58 Neb. 57. An Ohio case, *Treasurer of Fayette County v. Peoples & Drovers Bank,* 47 Ohio St. 503, 10 L. R. A. 196, holds that one part of a section may be void without affecting the validity of the remainder, unless both parts are so interwoven as to be inseparable. This is but an extension of the rule that one section may be upheld and another condemned. The point is not whether the parts are contained in the same section—for the distribution into sec-

tions is purely artificial—but whether they are essentially and inseparably connected in substance. This case distinctly recognizes the rule that a part, when it falls, falls for all purposes, and that another part may be held to be valid. A Utah case, *Konold v. Rio Grande W. R. Co.*, 16 Utah, 151, in terms, recognizes the rule that, when a part of an act is void, it can have no validity for any purpose.

"Obviously," say the court, "the provisions of this section are directly opposed to those of the constitution * * * and therefore can not have the force of law, and are void. * * * For like reasons, section 3197, relating to change of venue, is void, and ineffectual for any purpose."

And in *Steed v. Harvey*, 18 Utah, 367, 72 Am. St. Rep. 789, the rule that a part of an act, or of the same section, not dependent on another, may be held void, and the other valid, is recognized; but the same provision or section can not be held both void and valid. It seems to me that this undoubtedly announces the only rule that could be adopted with any degree of safety, or which could be intelligently applied in all cases where the question of the validity of a statute and its effect are to be considered and determined. In a United States supreme court case, *Supervisors v. Stanley*, 105 U. S. 305, a state statute on the assessment of the shares of bank stock conflicted in part with the United States statute authorizing deduction of debts, where that was the general rule in the state as to all other personal taxable property. The court held that the state statute was valid up to the point where it came in conflict with the congressional act, and that the taxation of bank stocks, without the allowance of deduction of debts, would render the taxes levied invalid only in so far as the tax debtor was entitled to deductions by virtue of the provisions of the act of congress. This, as I understand the case, is by the application of principles similar to those applied in the case of *Scott v. Flowers*, 61 Neb. 620, or to those sometimes applied to the taxation of the business of a corporation engaged in intrastate and interstate business, and the act is held to be valid so far as it affects

intrastate business, but not of force and effect as to inter-
state business. The court say, in *Supervisors v. Stanley,*
105 U. S. 305:

"In other words, in such a case, so much of the law
as conflicts with the act of congress in the given case is
held invalid, and that part of the state law which is in
accord with the act of congress is held to be the measure
of his (the stockholder's) liability. There is no difficulty
here in drawing the line between those cases to which
the statute does not apply and those to which it does, be-
tween the cases in which it violates the act of congress and
those in which it does not. There is, therefore, no neces-
sity of holding the statute void as to all taxation of na-
tional bank shares, when the cases in which it is invalid
can be readily ascertained on presentation of the facts.
It follows that the assessors were not without authority
to assess national bank shares; that where no debts of the
owners existed to be deducted the assessment was valid,
and the tax paid under it a valid tax. That in cases where
there did exist such indebtedness, which ought to be de-
ducted, the assessment was voidable but not void."

In other words, the statute could be given a constitu-
tional construction in that it permitted the assessment
of shares where no debts were to be deducted, and this
construction was given in preference to one holding it
wholly unconstitutional. In *Poindexter v. Greenhow,* 114
U. S. 270, the new act was held to be absolutely void, and
of no effect, as to the right of certain parties holding
bonds of the state to pay taxes by surrender of coupons
for interest, as this would amount to the impairment of
the obligation of a contract, otherwise the law was valid
and enforceable. By the application of the same principle,
we might, perhaps, if it were found necessary to uphold
the law, construe the statute applying to deficiency judg-
ments as being applicable only to contracts entered into
after the passage of the deficiency judgment law. This
same rule seems to be applied in *Commonwealth v. Gagne,*
153 Mass. 205, 10 L. R. A. 442.

I think the second opinion in the case at bar announces the correct rule, and that the motion for rehearing should be overruled.

REHEARING DENIED.

BARNES, J., concurring.

The only question in this case is, whether or not the act of 1887, providing for a tax upon the net premiums of insurance companies, repeals so much of the insurance law of 1873 as provides for what is commonly called "The reciprocal tax."

An examination of our legislation affecting this question shows that the law relating to insurance companies, above mentioned, was passed at the legislative session of 1873, and has remained substantially the same from that day to this. Further examination discloses that when the general revenue law of 1879 was enacted it contained a section, to wit, section 38, almost identical in form and substance with the act of 1873, above mentioned, except that it provided for taxing insurance companies upon their gross premiums instead of their net premiums. In the act of 1879 it was provided:

"Insurance companies shall be subject to no other taxation, under the laws of this state, except taxes on real estate, and the fees imposed by the chapter on insurance."

Under this law, which was in force from the time of its enactment until 1887, no claim was ever made that the clause, above quoted, repealed the reciprocal tax law, either directly or by implication. On the contrary, the reciprocal tax was collected from, and paid by, all foreign insurance companies doing business in this state subject to taxation under the terms thereof, without objection. The act of 1887 (ch. 77, sec. 38), however, contains the following:

"Insurance companies shall be subject to no other tax, fees or licenses, under the laws of this state, except taxes on real estate, and the fees imposed by section 32 of an act

regulating insurance companies, passed February 25, 1873."

It will be observed that there is a slight difference in the wording of the two provisions, but they are in substance much the same. To me it seems quite doubtful if the legislature intended to change that part of the law relating to the reciprocal tax. Without doubt it was the intention of the lawmakers not to interfere with the operation of that law at all.

It is contended, however, that the clause in the law of 1887, last above quoted, repeals the reciprocal tax law, known as section 33 of the Compiled Statutes, relating to insurance companies. The repealing clause found in section 2 of the act of 1887 does not repeal section 33 of the statutes relating to insurance companies, in express terms; so, if that section is repealed at all thereby, it is by implication, and because it is in direct conflict with the clause last above quoted. Nothing else in the act of 1887 can be construed to affect the reciprocal tax law in any manner whatever. It is our unanimous opinion that so much of the last mentioned act as is quoted above is unconstitutional and void, because it exempts insurance companies from taxation on their personal property. It follows, then, that this clause falls to the ground, it goes out of the statute, and the law stands the same as though it had never existed, and had never been passed by the legislature, for any purpose. Conceding now the correctness of the view that the first clause of the act of 1887, which provides for taxing insurance companies upon their net premiums, is good and can be enforced, and must therefore stand, it by no means follows that the act operates to repeal the reciprocal tax law. That part of the act relating to the taxation of insurance companies upon their net premiums does not conflict with the reciprocal tax law in any manner whatever; and there has been no suggestion that both of these laws can not stand and be enforced together. We have, then, the proposition that the clause of the act which may be held to be valid is not in

conflict with, and therefore does not repeal, the reciprocal tax law by implication or otherwise. And that portion of the statute which, if valid, might have that effect, being unconstitutional and void, and discarded and rejected for every and all purposes, the reciprocal tax law is in no wise affected thereby. See laws of 1873, p. 443; laws of 1879, p. 291, section 38; laws of 1887, p. 569.

SEDGWICK, J., dissenting.

Section 38 of the revenue law, referred to in the opinion, required insurance companies to be taxed upon the premiums received by them in excess of the losses and ordinary expenses, and provided that this taxation should be in lieu of all other taxes, except taxes on real estate. This provision, if entirely valid, would relieve insurance companies from the reciprocal tax, so called, which this action was brought to enforce against this defendant, and would also relieve them from taxation upon their personal property. These companies could not be relieved from taxation upon their personal property, because of the requirement of the constitution that every person and corporation shall pay a tax in proportion to the value of his, her or its property. The tax upon premiums provided for by the statute is held valid and enforced, and the opinion discloses that the provision of this statute doing away with the reciprocal tax, on account of the new tax imposed upon premiums, would be valid, if it were not for the fact that the same clause of the statute also attempts to relieve the personal property of these companies from taxation. It does not seem to be in harmony with reason or authority to hold that a sentence or clause of a statute which attempts to accomplish several distinct purposes must be held to be unconstitutional, *in toto,* because some one of the several things sought to be accomplished is beyond the power of the legislature. Exempting insurance companies from taxation upon their personal property was not an inducement to this legislation or to any part of it.

Taxation upon premiums was the inducement to the exemption from other taxation. If this new taxation was sufficient ground for all of the exemptions allowed in consequence thereof, there seems to be no reason for denying to the legislature the power to make such of the exemptions provided for as are not forbidden by the constitution. It has been held:

"A law which is unconstitutional within certain limitations, if in terms it exceeds or fails to notice those limitations, may yet be entirely operative within its legitimate sphere, and properly held to have the application which thus confines it." *Commonwealth v. Gagne,* 153 Mass. 205, 10 L. R. A. 442. *Poindexter v. Greenhow,* 114 U. S. 270, 29 L. ed. 185; *Board of Supervisors v. Stanley,* 105 U. S. 305, 26 L. ed. 1044; *Treasurer of Fayette County v. Peoples & Drovers Bank,* 47 Ohio St. 503, 10 L. R. A. 196, and notes. *Steed v. Harvey,* 18 Utah, 367, seems to hold a contrary doctrine, but no satisfactory reason for such holding is given.

The conclusion reached in the opinion does not seem to me to be well supported by the reasons given. It may be that it can be supported upon other grounds. At all events the case has already been twice argued, and as the majority of the court are satisfied that no different result could be reached upon further consideration of the case, a further hearing does not seem advisable.

The following opinion on motion of state for judgment on the pleadings was filed February 8, 1906. *Motion sustained:*

1. **Courts:** CONSTRUCTION OF FEDERAL CONSTITUTION. The state courts are bound by the decisions of the United States supreme court regarding the proper construction of a clause of the federal constitution and its application to the question involved in the litigation.

2. **Insurance:** INTERSTATE COMMERCE. The business of insurance is not commerce, and the making of a contract of insurance is a

mere incident of commercial intercourse in which there is no difference whatever between insurance against fire, insurance against the perils of the sea, or insurance of life. *New York Ins. Co. v. Cravens*, 178 U. S. 389.

LETTON, J.

This cause was argued and submitted to the court while Chief Justice HOLCOMB presided. Before his term of office expired he prepared the following opinion, which meets with our approval, and which expresses our views with clearness and perspicuity:

"This cause is submitted on the petition of the plaintiff, the state, the second amended and substituted answer of the defendant, and a motion filed by the state for judgment on the pleadings. The court has heretofore considered and decided the principal legal questions arising in this controversy on a ruling on a demurrer interposed by the state to the answer of the defendant. *State v. Insurance Co. of North America*, ante p. 335.

"Nothing new or essentially different from the questions already passed upon is presented by the defendant's second amended and substituted answer except that it is now alleged that the defendant's business of insurance of property against loss by fire, as conducted and carried on between it and the citizens of the different states of the Union with whom it contracts for indemnity, is interstate commerce within the meaning of the clause of the constitution of the United States concerning the regulation of commerce between the different states of the Union and the citizens thereof; that the tax sought to be enforced by the state in this action constitutes a direct imposition upon the insurance business of the defendant, and that the section of the statute of this state authorizing the exaction sought to be enforced amounts to a regulation of commerce among the states and of the instrumentalities enjoyed therein, in violation of clause 3, section 8, article I of the constitution of the United States. The question thus presented pertains to the construction of the federal

constitution and regarding which the ultimate and final decision rests with the United States supreme court.

"It is plausibly argued that the vast business of fire insurance, carried on, as it is, by the different companies and corporations of many of the states with the citizens of all the states of the Union, is so vital and interwoven with our industrial and commercial fabric that it is essential to the welfare, success and permanence of our institutions, and is in its nature a commodity, in the exchange of which the business should be properly classed as interstate commerce, entitled to the protection and coming within the provision of the clause of the federal constitution to which reference has been made. Without taking the time to engage in a discussion of the question as an original proposition to be decided upon a course of reasoning and logic based upon underlying principles, and under the rules pertaining to the proper construction of provisions found in the fundamental law of the land, we must content ourselves by saying that the question can hardly be regarded as an open one, and that we feel ourselves bound by the decisions of the highest judicial tribunal, whose special and peculiar function it is to construe a clause of the constitution of the kind and character under consideration, and apply it to questions of litigation as they may arise. It is not for us to ignore or seek to overturn the authoritative utterances of that august body, but rather to remand to it the question of whether its own opinions shall be approved and followed, or overruled, because upon further consideration they are believed to be erroneous or unsound.

"In *New York Fire Ins. Co. v. Cravens*, 178 U. S. 389, decided in 1900, by a unanimous court, it is held that 'The business of insurance is not commerce, and the making of a contract of insurance is a mere incident of commercial intercourse in which there is no difference whatever between insurance against fire, insurance against the perils of the sea, or insurance of life.' In the opinion, after discussing and affirming the power of the state to

regulate in the manner attempted, as shown herein, it is by the court said: 'Further comment on this head may not be necessary, and we only continue the discussion in deference to the insistence of counsel upon the interstate character of the policy in suit. It is the basis of every division of their argument, and an immunity from control is based upon it for plaintiff in error, which, it seems to be conceded, the state can exert over corporations of its own creation. An interstate character is claimed for the policy, as we understand the argument, because plaintiff in error is a New York corporation and the insured was a citizen of Missouri, and because, further, the plaintiff in error did business in other states and countries.' And further it is observed: 'Is the statute an attempted regulation of commerce between the states? In other words, is mutual life insurance commerce between the states? That the business of fire insurance is not interstate commerce is decided in *Paul v. Virginia,* 8 Wall. (U. S.) 168; *Liverpool Ins. Co. v. Massachusetts,* 10 Wall. (U. S.) 566; *Philadelphia Fire Ass'n v. New York,* 119 U. S. 110. That the business of marine insurance is not, is decided in *Hooper v. California,* 155 U. S. 648. In the latter case it is said that the contention that it is, "involves an erroneous conception of what constitutes interstate commerce." We omit the reasoning by which that is demonstrated, and will only repeat, "the business of insurance is not commerce. The contract of insurance is not an instrumentality of commerce. The making of such a contract is a mere incident of commercial intercourse, and in this respect there is no difference whatever between insurance against fire and insurance against the 'perils of the sea.'" And we add, or against the uncertainty of man's mortality.'

"*Hooper v. California, supra,* fully supports the later case of *New York Life Ins. Co. v. Cravens.* In *Paul v. Virginia* it is said by Mr. Justice Field, speaking for the court: 'Issuing a policy of insurance is not a transaction of commerce. The policies are simple contracts of

indemnity against loss by fire, entered into between the corporations and the assured, for a consideration paid by the latter. These contracts are not articles of commerce in any proper meaning of the word. They are not subjects of trade and barter offered in the market as something having an existence and value independent of the parties to them. They are not commodities to be shipped or forwarded from one state to another, and there put up for sale. They are like other personal contracts between parties which are completed by their signature and the transfer of the consideration. Such contracts are not interstate transactions, though the parties may be domiciled in different states. The policies do not take effect —are not executed contracts—until delivered by the agent in Virginia. They are, then, local transactions, and are governed by the local law. They do not constitute a part of the commerce between the states any more than a contract for the purchase and sale of goods in Virginia by a citizen of New York whilst in Virginia would constitute a portion of such commerce.'

"In *Crutcher v. Kentucky*, 141 U. S. 47, the question for decision was with reference to the validity of a state statute having for its object the regulation of agencies of foreign express companies, and it is held that the statute was a regulation of interstate commerce, so far as applied to corporations of another state engaged in that business, and was to that extent repugnant to the constitution of the United States. A consideration and comparison of the case last cited, with *Hooper v. California*, *supra*, will make clear and emphasize the holdings of the United States supreme court on the question of the conduct of the business of insurance not being of a character which brings it within the scope of the commerce clause of the constitution. In both cases, agents of the foreign corporations had been fined in the state courts, for doing business contrary to the provisions of the state statutes seeking to regulate the business of foreign corporations. Each of the statutes had been upheld in the state courts.

In the *Hooper* case the statute affected foreign insurance companies, while in the *Crutcher* case it was directed against foreign express companies. The principal question in each case argued on appeal to the federal supreme court was, whether the statute under which the conviction was had contravened the provision of the federal constitution with reference to the regulation of interstate commerce. In the *Hooper* case the decision of the state court was affirmed on the ground, distinctly stated, that the business of insurance carried on by a foreign corporation in the state of California did not involve interstate commerce and the state statute was therefore valid; while in the *Crutcher* case the decision of the state court was reversed for the sole and only reason that express companies were engaged in interstate commerce, and the law seeking to regulate the business of such companies came in conflict with the commerce clause of the federal constitution. In the *Crutcher* case, in pointing out the distinction between the making of contracts of insurance and interstate commerce, or the necessary instrumentalities thereof, it is said: 'The case is entirely different from that of foreign corporations seeking to do a business which does not belong to the regulating power of congress. The insurance business, for example, can not be carried on in a state by a foreign corporation without complying with all the conditions imposed by the legislation of that state. So with regard to manufacturing corporations, and all other corporations whose business is of a local and domestic nature, which would include express companies whose business is confined to points and places wholly within the state. The cases to this effect are numerous.'

"With these clear and explicit expressions as to the proper construction of the clause of the constitution appealed to by the defendant in the case at bar, as it applies to the business of insurance, our duty appears reasonably plain, and we must hold to the view that the answer, in respect to the matter being discussed,
26

states no defense to the cause of action pleaded by the plaintiff."

With these views we are content, and for the reasons therein stated the plaintiff is entitled to judgment on its motion, and it is accordingly so ordered.

Judgment for plaintiff will be entered for the sum prayed for in its petition.

JUDGMENT FOR PLAINTIFF.

SEDGWICK, C. J., dissents.